No. 30,693.

Vita A. Smith, *Appellee,* v. The Prudential Insurance Company
of America, *Appellant.*

(12 P. 2d 793.)

Opinion filed July 9, 1932.

*B. M. Dunham,* of Chanute, *William C. Michaels, Roy P. Swanson* and
*Kenneth E. Midgley,* all of Kansas City, Mo., for the appellant; *Ralph W.
Hyatt,* of Newark, N. J., *E. C. Meservey, W. C. Michaels, C. M. Blackmar,
S. D. Newkirk, H. I. Eager,* all of Kansas City, Mo., *J. W. Finley, J. A. Allen*
and *B. M. Dunham,* all of Chanute, of counsel.

*T. R. Evans,* of Chanute, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: The appeal in this case is by the defendant in-
surance company from a judgment of $1,210 rendered against it and
in favor of the beneficiary in a life insurance policy for $1,000, con-
taining also a disability provision for $10 per month. The plaintiff
claims that the disability feature by its terms cared for the semi-

annual premiums after the first two payments, otherwise there would have been a lapse as far as the life insurance part of it was concerned on account of the failure to pay premiums. Defendant tendered into court with its answer the total premiums that had been paid, with interest thereon, and pleaded many defenses to the allegations of the petition, among which were the following:

". . . that said policy was void for misrepresentations in the application, and that the provisions as to total and permanent disability were void for want of a risk as the loss insured against under said provisions had already occurred at the time the policy was issued . . ."

The resistance of the defendant to the disability feature is based upon the theory, supported by some evidence in the form of written statements, that the disability of which the insured complained arose two months before the application for the policy. One of such documents was the formal application for disability benefits, signed by the insured and stating a disability at an earlier date than the application. Plaintiff invokes the incontestable clause of the policy, which, as far as time is concerned, fully meets this situation. Defendant insists that while the incontestable clause clearly precludes setting up fraud to defeat the death benefit, yet as to the disability insurance the risk or chance of loss was not present, because the insured was already disabled, and an attempted agreement to insure against something which already existed would be absolutely void, and this would carry with it the incontestable clause as being a part of the agreement and also necessarily void.

This statement of the theory and position of each of the two contending parties brings us to the vital question of fact, Did the disability of the insured exist prior to the application for and the issuance of the policy? The jury in its general verdict and in its answers to special questions found that it did not. Appellant urges that the verdict and answers are not supported by any competent evidence and that the record shows as a matter of law that the disability existed before the application was made. Appellant indicates its position on this question and its grounds for reversal of the judgment rendered mainly in two concise statements, as follows:

"The provisions of the policy relating to disability insurance and waiver of premiums are void as the loss insured against in these provisions had already occurred at the time the policy was applied for, and the company is not prevented from setting up this defense by the running of the contestable period stipulated in the contract. There was, therefore, no waiver of premiums and the life insurance lapsed for nonpayment of premiums prior to insured's death."

"Even assuming that the policy is valid in all its provisions, still it does not cover a disability having its inception prior to the application for and the issuance of the policy, and the life insurance lapsed for nonpayment of premiums prior to insured's death."

These propositions are supported by numerous authorities and as propositions of law they seem to be sound, but they both assume a matter of fact as a premise, and without such premise the propositions would have no substantial basis. The first one definitely assumes that "the loss insured against in these provisions had already occurred at the time the policy was applied for." The second one assumes that the disability had "its inception prior to the application for and the issuance of the policy." In order for either proposition to be controlling the premise must be a reality. Ordinarily this would be purely and simply a matter of fact. However, appellant urges a second support for its premise, that it is conclusive as a matter of law by reason of certain written evidence, which should be *prima facie* proof, and conclusive evidence equivalent to admissions.

The insured, Walter Smith, a boy about seventeen years old, was in Kansas City, Mo., attending high school in the spring of 1928. He became ill in April of that year, left school and went to the home of Mrs. Ward, where he was living; was in bed several days; a doctor called twice; he got better and went to his mother in Wichita about May 13, 1928. On June 22, 1928, he made application for this policy. It was delivered shortly thereafter, bearing that date. On June 28, 1928, after lifting a large cake of ice, he had a hemorrhage. On July 5, 1928, he was examined by a physician for admission to the state sanatorium for tuberculosis at Norton, Kan.; March 4, 1929, he made written application to the insurance company for disability benefits. This was received by the company April 1, 1929. Semiannual premiums were paid June 22, 1928, and December 22, 1928, paying same, including grace, up to July 23, 1929. He died January 20, 1931. This action was commenced July 9, 1931.

As stated above, the disability statement to the insurance company and the application to the sanatorium contained references to insured having had a hemorrhage in April, 1928. The former document was signed by him and the latter by a physician. The evidence showed the filling of blanks in the former was in a different handwriting and there were some erasures. A photostatic copy of the

former is in the record here. The latter appeared to have been signed by the physician in two places and testimony shows only one of the two signatures was his.

He stayed at the sanatorium at Norton a few weeks and returned in time to enter high school at Chanute, his home, in the fall of 1929.

Three physicians testified, mostly from examinations made after the hemorrhage in June, and upon hypothetical questions about an earlier indication of tuberculosis or possible occurrence of earlier hemorrhage. The plaintiff, a nurse in Wichita and Chanute, testified as to the boy's health when and after he came to her at Wichita on May 13, 1929, saying his apparent physical condition was good and it continued good until June 28, 1928, when he had a hemorrhage after carrying and lifting a fifty-pound block of ice; that she saw him in Kansas City on April 8. He was then going to high school. She said she had no knowledge or notice that her son was suffering from any physical defect until June 28, 1928, when he had the hemorrhage.

Mrs. Ward, with whom the insured boy was living in Kansas City and going to high school, testified that he had lived at her home for about seven years. He came home from school in April sick and indisposed. He had a bad cold. After a few days she called a doctor who gave him some medicine, which she said helped him. He stayed in bed a couple of days, then was up and around the house. She testified he did not have a hemorrhage and while at her home she never knew or heard of him having a hemorrhage. Up to the time he contracted the cold his health was apparently good; he did not have a cough. He stayed around the house, was apparently better and over his cough when he went to his mother at Wichita on May 13. She was away from the home at work every day, but was home in the evenings. He complained of pain in his throat and chest, he coughed just as one would with a cold, expectorated phlegm, and had a running nose. In cross-examination she said he had complained that the boys had been sent out for track practice in their track suits and he was just chilled through, just frozen and felt sick and feverish.

Appellant insists it was error for the plaintiff and Mrs. Ward to be permitted to testify as to the apparent health of the boy prior to June 28, 1928, and as to his not having a hemorrhage prior to that date, over its objection that such was incompetent and a conclusion. Apparent health, as the qualifying word of the term in-

dicates, is not a technical condition calling for an opinion to be given only by one who is an expert. It is, by the very term itself, something anyone might observe and express. That one had or did not have a hemorrhage might be a conclusion if it were something unusual or difficult to recognize, as some ailments and diseases are, but not as to a hemorrhage.

"The opinion of those who were familiar with the person in question or had frequent opportunities of observing him is admissible as to his general health, strength, and bodily vigor, or, on the other hand, his feebleness or apparent illness, or his change in physical condition from one time to another, though the witnesses are not experts." (11 R. C. L. 606.)

". . . An ordinary observer who has had suitable opportunity for observation may state the apparent physical condition of another person. . ." (22 C. J. 618.)

"A nonexpert witness should not ordinarily be allowed to testify that a person had or had not a particular disease, although an ordinary observer has been allowed to state that a certain person had consumption, or that certain persons died of that disease." (22 C. J. 622.)

"The modern notion of the admissibility of evidence is that it is more important to get the truth than to quibble over impractical distinctions between facts and conclusions." (Bank v. Robinson, 93 Kan. 464, syl. ¶ 2, 144 Pac. 1019. See, also, 3 Jones Commentaries on Evidence, 2d ed., 2306; 4 Wigmore on Evidence, 2d ed., 197; and 22 C. J. 530.)

Appellant in this connection cites the ruling in the case of Glasgow v. Woodmen of the World, 107 Kan. 354, 191 Pac. 470, where a member of the family testified that she had no knowledge of a certain consultation and treatment of the deceased, contradicting direct and positive testimony of the physicians having had such consultation and given such treatment. Hardly controlling in the present case.

The evidence further shows that the boy did not resume his studies at any school after his illness in April until the fall of 1929; that he did not do anything in the way of work after his illness and before applying for the policy; that one of the physicians said that one suffering from active tuberculosis would not be able to engage in any active occupation without endangering his life, and that even in this condition one might appear to be in good health; that the boy's father died in 1916 of tuberculosis. The certificate of death of the boy shows that he died of pulmonary tuberculosis.

The jury answered special questions on this particular branch of the case as follows:

"Did the plaintiff at the time he applied for insurance with the defendant company know that he was suffering from pulmonary tuberculosis? A. No.

"Did the insured, Walter P. Smith, become totally and permanently disabled within the purview of the policy relating to that matter after June 22, 1928? A. Yes.

"Did he make proof of this disability to the company before June 22, 1929? A. Yes.

"Did Walter Smith have a hemorrhage of the lung during April or May of the year 1928? A. No.

. . . . . . . . . . . . .

"Was Walter Smith suffering from active pulmonary tuberculosis prior to June 22, 1928? A. No."

Was there any evidence to support these answers and the general verdict? The evidence of the plaintiff, the mother of the boy, and Mrs. Ward, with whom he lived for seven years, supports these findings as against the written statements or *prima facie* evidence to the contrary. The evidence of the physicians from their subsequent examinations and in answer to hypothetical questions is to the general effect that it might be either way. Had the written statements been written by the insured, or shown to have been written just as he answered or dictated, they would have been of greater weight, and stronger evidence to contradict them would have been required. We think there was sufficient evidence to support the general verdict and the answers given to the special questions.

As to being able to find as a matter of law that the disability occurred prior to the date of the application, we think the situation is very different from that in which such finding is ordinarily made, based usually upon some admission or substantial written statement about which there is no question as to its being so intended by the writer. Even then it is not conclusive if shown to have been wrong or inaccurate.

"In making proof of a disease against which the plaintiff was insured, a mistake inadvertently made as to the time the disease was contracted was open to explanation and correction and did not estop her to show the real facts in the case as to when her sickness actually began." (*Gass v. Casualty Co.*, 113 Kan. 510, syl. ¶ 1, 214 Pac. 1115.)

In the case just cited the same question was at issue as is here involved, whether the disease was contracted less or more than thirty days after the insurance was in force. The sister of the insured in making out proof of the illness inserted a wrong date. Evidence was held to be admissible to show the correct date and explain the inadvertence. Appellant here says no attempt was

made to explain the inadvertence. There was nothing along that line except that none of the statements were made in the handwriting of the insured and that the instruments showed there had been some changes. But if shown to be incorrect and wrong, the correct fact should prevail even if there should be a lack of rational explanation as to how the error occurred.

It is urged that there was no evidence given as to the furnishing of proof of death. The pleadings did not require it, as the petition contained a general allegation that plaintiff had done and performed all the conditions required of her, and without a special plea of breach of this condition no proof will be required. (R. S. 60-743; *Brookings v. American Ins. Co.*, 134 Kan. 616, 7 P. 2d 111.)

There were allegations in the answer as to the original application containing fraudulent misrepresentations and known to be false when made, and evidence was introduced along that line, but before the case was submitted to the jury this issue was withdrawn by the defendant and the withdrawal of it does not leave an issue on that proposition to be decided from the evidence as a matter of law.

Another error is assigned in decreeing judgment for plaintiff for the disability benefit for twenty-one months at $10 per month because she was not under the terms of the policy the real party in interest. This disability benefit was payable to the insured and therefore would survive only to the personal representative of the insured. The testimony of the plaintiff was that the insured was her son, and unmarried at the time of his death, that his debts have all been paid except one for funeral expenses, which she has assumed. In disposing of an objection to a certain question along this line the record shows no administrator had within the prescribed time been appointed. The only interest a defendant can have with reference to the plaintiff being the real party in interest is to be fully protected by the judgment against a further liability for the same cause. The record shows that a release was filed in this case by the only creditors of the estate for funeral expenses, not during the trial as a part of the evidence, but on the day the judgment was rendered by the trial court, which, although later and irregular as to usual procedure, yet none the less effective for the protection of the defendant.

"The defendant has a right to insist that an action against him shall be brought by the real party in interest, as the statute provides, but the purpose

of the statute has been attained if the defendant is not shut out from defenses and counterclaims and will be fully protected by the judgment from any further liability on the same cause." (*Rullman v. Rullman,* 81 Kan. 521, syl. ¶ 3, 106 Pac. 52.)

Much is in the briefs as to the effect and application of the incontestable clause, but under the situation in this case, everything being centered upon the fact of the time when the disability arose, that clause is in no way controlling. Likewise as to the proof of agency, which could not have any bearing in the case except as to the payment of premium, which is provided for in the disability feature when that is upheld.

A careful study of the instructions given and those refused, as well as the written objections to those given, does not reveal any substantial error.

We think the judgment should be affirmed. It is so ordered.