(122 P.3d 384)

No. 91,572

STATE OF KANSAS, *Appellee*, v. CARL W. MCFADDEN, *Appellant*.

Opinion filed February 18, 2005.

*Michael S. Holland* and *Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Ernest H. Richardson*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before MARQUARDT, P.J., MALONE and CAPLINGER, JJ.

MARQUARDT, J.: Carl W. McFadden appeals his conviction for driving while under the influence (DUI). We affirm.

On the evening of July 15, 2002, between 9:30 and 10 p.m., Brandon Hosheit and Mark Mayes were riding motorcycles when Hosheit noticed a car (whose driver was later identified as McFadden) approaching from behind. Hosheit and Mayes were traveling 60 to 65 mph and were directly behind a semi-trailer truck. McFadden's vehicle was following them very closely. Hosheit and Mayes accelerated to between 75 and 80 mph to pass the semi. McFadden followed them as they passed the semi. As McFadden passed the motorcycles, he almost hit Hosheit. Hosheit estimated that McFadden's speed was between 85 to 100 mph.

McFadden reduced his speed as he approached the city of Cullison. Hosheit and Mayes followed McFadden. Hosheit noticed that McFadden crossed the center line at least 13 times. McFadden's car crossed into the oncoming lane twice. McFadden then crossed the center line, over-corrected, hit the rumble strip on the opposite side of the road, and slammed on his breaks before returning to his lane.

Hosheit believed that McFadden was impaired and on the verge of causing a serious traffic accident. He decided to continue to follow McFadden. McFadden continued his erratic driving as he approached the city of Haviland. Hosheit and Mayes decided to stop McFadden when they saw him pulling into the driveway of a co-op.

As Hosheit approached McFadden, he detected the odor of alcohol. McFadden had trouble balancing and leaned on his car door for support. When Hosheit and Mayes confronted McFadden about his driving, he denied having any problems.

Hosheit had previously served as a sheriff's deputy for Kiowa County and was familiar with the signs of an impaired person. Hosheit believed that McFadden was too impaired to drive safely. Hosheit used his cell phone to call the local sheriff's department and removed McFadden's keys from his car.

Deputy Mike Yohn arrived and observed that McFadden had trouble walking and keeping his balance, his speech was slurred, his eyes were bloodshot and glazed over, and Deputy Yohn de-

tected the odor of alcohol. Deputy Yohn administered several field sobriety tests which McFadden performed poorly. Deputy Yohn placed McFadden under arrest. He read McFadden the implied consent advisory and also provided him with a written copy.

After McFadden consented to a blood test, Deputy Yohn searched McFadden's car and found bottles of beer on the front passenger floorboard, three of which were unopened, two of which were empty, and one of which was open.

McFadden was taken to the hospital where a registered nurse drew his blood at 11:20 p.m. Tests at the Kansas Bureau of Investigation laboratory indicated that McFadden had a blood alcohol level of .20.

McFadden admitted that he had three or four beers on his way home from Wichita. He had spent the day at a golf tournament in Wichita which lasted from 9 a.m. until 2 p.m. McFadden and two friends drank three six-packs of beer between them. After the tournament, Joel Lovesee and McFadden stayed in the clubhouse for a couple of hours and drank more beer before leaving around 6 p.m. McFadden drove Lovesee to Kechi. According to Lovesee, McFadden did not appear to have any problem driving safely. They arrived in Kechi at approximately 6:30 p.m. and McFadden left sometime between 7 and 8 p.m.

McFadden was charged with DUI and transporting an open container. McFadden reserved his opening statement until after the State concluded its case. During cross-examination of the State's witnesses, McFadden's counsel asked whether various medical conditions could make it appear an individual was intoxicated when they were not. The State's witnesses were also asked whether they were familiar with the drug Cortisol. During McFadden's opening statement, his counsel indicated that McFadden would testify about his medical condition, at which time the State objected and the following dialogue took place outside of the presence of the jury:

"MR. RICHARDSON [State's Attorney]: I'm also concerned with the intimations that there's some sort of medical condition that would result in the Cortisol thing. What the defense is trying to get the jury to believe is the medications he

took affected the alcohol content and he does not have the witnesses to testify to that.

"MR. HOLLAND [McFadden's Attorney]: Mr. McFadden can testify about his own medical problems or conditions.

"THE COURT: No, he cannot unless he's a doctor.

"MR. HOLLAND: Yes, he can testify . . . what he believes it would be. He's entitled to do that.

"THE COURT: I don't believe he can talk about a medical malady he has that's been diagnosed by a physician.

"MR. HOLLAND: He can testify what believes [*sic*] he has as far as what his medical conditions are or are not. It's not like I'm bringing in a third party. This is his own medical condition. Mr. Richardson can point out to the jury that it's not substantiated by a doctor or that person, that's his prerogative.

"THE COURT: You're not going to bring that in here, you understand that?

"MR. HOLLAND: We're going to proffer it then, write it on appeal and we'll come back down again.

. . . .

"THE COURT: All right. While we were up here you indicated to me, Mr. Holland, your client was going to talk about some type of medical condition that he has. I don't know what that is but I told you up here that he is not a physician as far as I know and I'm not going to allow him to talk about medical conditions, and furthermore, would not allow him to testify as to how a medical condition can affect him in this type of a situation, and you indicated you had something you wanted to proffer in reference to that.

"MR. HOLLAND: Yes, we wanted to make a proffer. Well, obviously I believe it's already on the record but we would object to the Court's ruling. I believe Mr. McFadden is entitled to testify as to the known medical condition he believes he has. It is different than expert testimony being asked to talk about some other person or some other thing. Mr. McFadden can testify as to what his beliefs are.

"THE COURT: And those are what?

. . . .

"MR. HOLLAND: His belief and after consulting numerous different individuals, labs, and research of his own which we were going to go through in detail with the jury which Your Honor has indicated we are not permitted to do, his ultimate conclusion is that he has what is called severe adrenaline deficiency. It takes place in episodes occasionally. It is similar to diabetes but not the same, that he has been prescribed and is taking a drug called Cortisol. . . .

. . . .

"MR. HOLLAND: . . . He takes that during these episodes and he has had subsequent episodes after July 15th, 2002, and it is his opinion this is what he was suffering from on July 15th, 2002, and what caused his apparent driving difficulties as testified to by the officers.

"THE COURT: I appreciate your proffer but my ruling in reference to the objection made by the County Attorney will stand.

. . . .

"MR. HOLLAND: Your Honor, after speaking with Mr. McFadden based upon your rulings, Mr. McFadden now believes he has nothing to gain and we'll only potentially harm his case by testifying without being able to give an explanation to the jury. . . . Mr. McFadden has decided not to testify . . . ."

A jury found McFadden guilty of DUI and transporting an open container. He timely appeals his conviction.

McFadden argues that by prohibiting him from testifying about his medical condition, the trial court violated his constitutional rights to testify on his own behalf and present a defense.

"The admission of evidence lies within the sound discretion of the trial court. [Citation omitted.] An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. [Citation omitted.]" *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

When the appellate court reviews a constitutional challenge to the admission of evidence, it applies the federal constitutional rule, under which an error may not be held to be harmless unless the appellate court is willing to declare beyond a reasonable doubt the error had little, if any, likelihood of having changed the result of the trial. *State v. Atkinson*, 276 Kan. 920, 925, 80 P.3d 1143 (2003).

McFadden argues that even though the exclusion of evidence is typically reviewed using an abuse of discretion standard, his case "actually raises an 'abstract question of law' directly effecting [*sic*] the rules of evidence themselves." He argues, therefore, that this court should use a de novo standard of review.

The State points out that the cases cited by McFadden do little to support his argument. *State v. Smallwood*, 264 Kan. 69, 80, 955 P.2d 1209 (1998), supports the use of an abuse of discretion standard. *Kuhn v. Sandoz Pharmaceuticals Corp.*, 270 Kan. 443, 456, 14 P.3d 1170 (2000), explains " '[l]ittle turns . . . on whether we label review of this particular question abuse of discretion or de novo, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction.' "

"A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. [Citations omitted.] A defendant's interest in presenting such evidence may thus ' "bow to accommodate other legitimate interests in the criminal trial process." ' [Citations omitted.] As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' [Citations omitted.] Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused. [Citations omitted.]" *United States v. Scheffer*, 523 U.S. 303, 308, 140 L. Ed. 2d 437, 118 S. Ct. 1261 (1998).

As a means of ensuring reliable evidence, K.S.A. 60-456(a) limits the opinion testimony given by lay witnesses to opinions which "may be rationally based on the perception of the witness." The statute limits opinion testimony offered by experts to opinions based on facts perceived by or personally known to the witness and "within the scope of the special knowledge, skill, experience or training possessed by the witness." K.S.A. 60-456(b).

In Kansas, a lay witness may testify about the external appearances and manifest medical conditions that are readily apparent to anyone. *E.g., Hiatt v. Groce*, 215 Kan. 14, 21, 523 P.2d 320 (1974). However, lay witnesses are not competent to provide reliable testimony about medical matters beyond the common knowledge of laypersons, or those that are not readily apparent such as medical diagnoses or the effects of possible medical conditions. *Smith v. Prudential Ins. Co.*, 136 Kan. 120, 124, 12 P.2d 793 (1932).

McFadden's proffer of testimony about his medical condition goes beyond the common knowledge of laypersons. Even if a jury had heard about McFadden's medical condition and the fact that it could cause someone to be impaired, it would still not contradict the uncontroverted evidence that McFadden had a blood alcohol level of .20. The trial court had a legitimate interest in admitting only reliable evidence and did not abuse its discretion by prohibiting McFadden from testifying about his medical condition.

The trial court did not infringe upon McFadden's constitutional right to testify on his own behalf or present a defense. McFadden

had the opportunity to offer factual testimony or to call an expert to offer medical testimony, but did not do so.

Affirmed.

MALONE, J., concurring: I would find that the trial court erred in not allowing Carl W. McFadden to testify about his understanding of his own medical condition and how it may impair his driving ability. In this case, however, I believe the error was harmless. McFadden was convicted of alternative counts of driving under the influence of alcohol, including a per se violation of driving with a blood alcohol level exceeding .08. The uncontroverted evidence was that McFadden had a blood alcohol level of .20. The proffer of McFadden's testimony about his medical condition and how it may cause "driving difficulties" would not have contradicted the evidence that McFadden's blood alcohol level was over twice the legal limit. Therefore, I concur with the result reached in the majority opinion.