NOT DESIGNATED FOR PUBLICATION

No. 112,690

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEONARDO PEREZ-HERNANDEZ,
*Appellant.*


MEMORANDUM OPINION

Appeal from Rice District Court; STEVEN E. JOHNSON, judge. Opinion filed January 8, 2016.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Scott E. McPherson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., BUSER and SCHROEDER, JJ.

*Per Curiam*:  Leonardo Perez-Hernandez was convicted in a jury trial of felony theft of diesel fuel. He timely appeals. On appeal, Perez-Hernandez presents two points of error:  (1) The district court erred by not striking all of the branch manager's testimony because it contained inadmissible hearsay evidence; and (2) the district court erred by giving a preliminary jury instruction at the beginning of the jury trial. We find the testimony by the branch manager about the container's capacity was inadmissible hearsay; however, the error in admitting the container's capacity was harmless given the overwhelming volume of evidence to support Perez-Hernandez' guilt. Additionally, we

1

find the district court did not err in giving the preliminary jury instruction at the start of the trial. We affirm.

FACTS

Perez-Hernandez was charged with the theft of more than $1,000 of diesel fuel from Farmers Co-op in Lyons. The theft occurred between September 23, 2012, and July 21, 2013. Perez-Hernandez pled not guilty.

After the jury was impaneled but prior to opening statements, the district court read the jury preliminary instructions which included the following:

> "You must not engage in activities or be exposed to any information that might unfairly affect the outcome of this case. Any juror who violates these restrictions I have explained to you jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. As you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, the Court, and the taxpayers."

The parties did not have an opportunity to comment on, or object to, the preliminary instructions before they were read. The record reflects Perez-Hernandez did not contemporaneously object to the instruction.

The State called two witnesses to testify: The branch manager of Farmers Co-op (the Co-op), and Chris Detmer, Lyons Chief of Police. The branch manager testified he discovered the loss of approximately 729 gallons of diesel on September 24, 2012; 660 gallons of diesel on October 11, 2012; and another 398 gallons of diesel on October 23, 2012. Between the October losses, the branch manager installed new padlocks on the fuel tanks. After the October 23 loss, the branch manager had the tanks pressure tested and learned the tanks were not leaking. The branch manager testified there was no loss of

2

diesel between October 23, 2012, and February 11, 2013. He testified he discovered a loss of 517 gallons on February 11, and a loss of 687 gallons on March 12, 2013.

With the losses mounting, the branch manager reviewed his records and noticed a pattern in the transactions—they involved late night transactions paid by credit cards ending in No. 6698 and No. 4035 on multiple occasions and one transaction involving a credit card ending in No. 9040. After the March loss, the branch manager installed a surveillance camera in the canopy above the diesel dispenser.

On May 15, 2013, the branch manager discovered a loss of 729 gallons of diesel. Upon review of the Co-op's records, he found three late night transactions: one utilizing card No. 6698 and two utilizing a new card No. 6620. The total loss for the six thefts was approximately 3,720 gallons of diesel worth $13,985.91.

During the branch manager's testimony, he discussed how the fuel dispensers worked and how access is obtained to the inside of the pump through a locked door. He said there are two pulser units attached to the pump shaft inside the fuel dispenser. The pulser units count the revolutions of the shaft, and convert the revolutions into gallons, which are shown on the dispenser's display. A specialized key is required to open the fuel dispenser door and access the pulser unit.

The branch manager testified the pulser units found in Perez-Hernandez' truck were tested on the fuel dispensers. When pulser No. 1 was attached to the fuel dispenser, a container was filled with diesel, and the display registered 1.171 gallons. When pulser No. 2 was connected to the fuel dispenser, and the same container was filled, the display registered .58 gallons.

As the trial progressed, Perez-Hernandez filed a motion in limine to "prohibit the introduction of any evidence or statements of any scientific results of testing" done by

3

experts from the Division of Weights and Measures since the experts were not testifying. The motion also argued the capacity of the container the diesel fuel was pumped into as the pulsers found in Perez-Hernandez' truck were tested was hearsay. The branch manager admitted he had no independent knowledge of the container's capacity. Perez-Hernandez then moved to have the branch manager's testimony struck as it related to the testing of the pumps and pulsers. The district court granted the motion in part and denied it in part by ruling the State's witnesses could testify to their observations of the testing, but not the science behind the testing.

Outside the presence of the jury, the branch manager testified the Division of Weights and Measures provided the bucket used to test the pulsers. He was told by the Division of Weights and Measures the bucket had a 5-gallon capacity. Perez-Hernandez again moved to strike all of the branch manager's testimony related to the tests as hearsay. The district court denied Perez-Hernandez' motion because it could not find the branch manager's testimony "inherently unreliable."

Next, Chief Detmer was called and he testified the surveillance video from May 15, 2013, showed two semi-trucks pull up to the diesel fuel dispenser. Though the semi-truck's passenger door partially obscured the view, Chief Detmer testified the dispenser's cabinet door opened and closed prior to dispensing fuel. The surveillance video was published to the jury.

Chief Detmer testified that during the ongoing investigation, he was called to the Co-op at 2:17 a.m. on July 21, 2013, because two trucks matching the trucks in the May 15, 2013, video were at the Co-op. Chief Detmer's investigation recovered credit cards ending in No. 6698 and No. 6620 from Perez-Hernandez, and a credit card ending in No. 4035 from the other driver. Chief Detmer also testified a key to the fuel dispenser cabinet door and two pulser units were discovered in Perez-Hernandez' truck.

After the State rested, Perez-Hernandez recalled the branch manager to the stand. The branch manager testified pulser No. 1 dispensed between 5 and 10 gallons per gallon registered depending on the battery pack used. He testified pulser No. 2 dispensed between 10 and 20 gallons per gallon registered depending on the battery pack used.

The jury found Perez-Hernandez guilty. He was sentenced and now timely appeals.

ANALYSIS

*The branch manager's testimony contained both hearsay and nonhearsay evidence.*

An appellate court exercises de novo review of a challenge to the adequacy of the legal basis of a district court's decision on the admission or exclusion of evidence. *State v. Bowen*, 299 Kan. 339, 349, 323 P.3d 853 (2014). Here, Perez-Hernandez challenges the district court's admission of the branch manager's testimony related to the testing of the pulsers, arguing the branch manager's testimony was hearsay not within an exception to the hearsay rule.

K.S.A. 2014 Supp. 60-460 defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Unless there is a statutory exception or constitutional concern, hearsay is inadmissible. *State v. Cosby*, 293 Kan. 121, 128, 262 P.3d 285 (2011).

The branch manager's testimony that the measuring container's capacity was 5 gallons was based on hearsay. The branch manager testified he had no knowledge of the container's capacity until personnel from the Division of Weights and Measures told him it was a 5-gallon container. The branch manager also testified the container had a 5-

gallon capacity and asserted that when filled, there were 5 gallons in the container. Because the statement by the Division of Weights and Measures' personnel was an out-of-court statement used to prove the truth of the matter that the container's capacity was 5 gallons, it was inadmissible hearsay. Further, the statement regarding the container's capacity does not fall within any of the statutory exceptions to hearsay. See K.S.A. 2014 Supp. 60-460. Thus, the district court erred when it improperly admitted hearsay evidence of the container's 5-gallon capacity.

Perez-Hernandez also argues the branch manager's testimony regarding the testing procedures was hearsay because it went beyond a layman's knowledge of the pulser testing process. Perez-Hernandez asserts the branch manager's testimony relied on specialized knowledge of the testing process gleaned from conversations with experts from the Division of Weights and Measures during their testing.

A lay witness may give opinion testimony if the judge finds the opinion is rationally based on the perception of the witness, is helpful to a clearer understanding of the witness' testimony, and is not based on scientific, technical, or other specialized knowledge. K.S.A. 2014 Supp. 60-456(a). Perez-Hernandez argues *State v. McFadden*, 34 Kan. App. 2d 473, 122 P.3d 384 (2005), is analogous because the testimony relied on specialized knowledge. In *McFadden*, the defendant was charged with driving under the influence and transporting an open container. McFadden believed he had severe adrenaline deficiency and believed his medical condition was responsible for his erratic driving. After consulting with other individuals, labs, and conducting his own research, McFadden wanted to testify about his beliefs about his medical condition. The district court prohibited this line of testimony, and, on appeal, a panel of this court affirmed the district court's ruling. The panel held lay witnesses may testify about external appearances and medical conditions that are readily apparent but could not provide testimony about medical matters "beyond the common knowledge of lay persons," including diagnoses or the medical condition's effects. 34 Kan. App. 2d at 478.

6

*McFadden* actually supports the admissibility of the branch manager's testimony regarding the testing process. While the branch manager discussed the testing procedure with personnel from the Division of Weights and Measures before testing began, his testimony was limited to his perception of testing performed on the pulser units. The testing consisted of plugging in a confiscated pulser, activating the dispenser, dispensing clear diesel into a container with a known capacity, and comparing the amount dispensed to the number of gallons the dispenser registered as dispensed. Though the container the diesel was dispensed into was considered specialized equipment, an observer did not require any specialized knowledge to observe how the container was filled and what was registered as the numbers of gallons pumped on the dispenser. The testing was easily perceived and was certainly within the common knowledge of a lay person. The district court did not err when it allowed the branch manager to testify, as nonhearsay, regarding his observations of the testing procedures.

*Perez-Hernandez' constitutional right to confront witnesses was violated.*

Perez-Hernandez argues the district court violated his constitutional rights by allowing the branch manager to testify regarding statements made by personnel from the Division of Weights and Measures since Perez-Hernandez did not have the opportunity to confront anyone from the Division of Weights and Measures. The Sixth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment to the United States Constitution, grants the accused the right to confront the witnesses against him. *State v. Brown*, 285 Kan. 261, 282, 173 P.3d 612 (2007). Issues related to confrontation under the Sixth Amendment are reviewed de novo. *Brown*, 285 Kan. at 282.

Much of the testimony Perez-Hernandez challenges was not hearsay, was based on the branch manager's personal observation, and does not violate Perez-Hernandez' right of confrontation. However, since we have already found the testimony about the

7

container's capacity was hearsay, we must determine how this impacted Perez-Hernandez' constitutional right of confrontation. Testimonial hearsay statements implicate the Confrontation Clause of the Sixth Amendment to the United States Constitution and are inadmissible unless the defendant had a prior opportunity to cross-examine the declarant and the declarant is unavailable to testify. *State v. Noah*, 284 Kan. 608, 611, 162 P.3d 799 (2007). In *Brown*, the Kansas Supreme Court identified a list of factors to determine whether a hearsay statement is testimonial, including:

"(1) Would an objective witness reasonably believe such a statement would later be available for use in the prosecution of a crime?

"(2) Was the statement made to a law enforcement officer or to another government official?

. . . .

"(4) Was the level of formality of the statement sufficient to make it inherently testimonial; *e.g.,* was the statement made in response to questions, was the statement recorded, was the declarant removed from third parties, or was the interview conducted in a formal setting such as in a governmental building?" 285 Kan. at 291 (citing *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 [2006]; *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 [2004]; *State v. Miller*, 284 Kan. 682, 163 P.3d 267 [2007]; *State v. Henderson*, 284 Kan. 267, 160 P.3d 776 [2007]).

The capacity of the measuring container was testimonial hearsay. At the time of testing, six people were present (four of whom were from the Division of Weights and Measures), including a law enforcement officer. Based on the alleged method of theft and the presence of law enforcement, an objective witness would reasonably believe statements made during the testing would be used in the prosecution of the crime. Even if the statement was not made to Chief Detmer, it was made in his presence. Presumably, the statements were recorded since, in his motion in limine, Perez-Hernandez moved to prohibit introduction of the video of the testing as evidence. Based on the *Brown* factors, the measuring container's capacity was testimonial hearsay. Therefore, the hearsay was only admissible if the declarant was unavailable and the defendant had a previous

8

opportunity to cross-examine the declarant. No one from the Division of Weights and Measures testified at any hearing in this case and Perez-Hernandez did not have an opportunity to cross-examine anyone from the Division of Weights and Measures. The district court erred when it admitted testimonial hearsay regarding the capacity of the measuring container.

*The admission of hearsay evidence involving the capacity of the measuring container was harmless.*

When an error infringes upon a party's federal constitutional right, a court will declare a constitutional error harmless only when the party benefitting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]), *cert. denied* 132 S. Ct. 1594 (2012).

In addition to the inadmissible hearsay evidence, the State's evidence reflected:

- A video of Perez-Hernandez opening the door to the fuel dispenser on the side where the pulser unit is installed;
- The specialized key needed to open the fuel dispenser's door found in Perez-Hernandez' truck;
- The two pulser units found in Perez-Hernandez' truck; and
- Credit cards with account numbers linked to the earlier thefts.

In addition, the branch manager testified both confiscated pulsers were tested using the same container. Both tests filled the container to the same level. When pulser No. 1 was plugged in, the display registered 1.171 gallons had been pumped. Pulser No.

9

2 displayed .58 gallons had been pumped.  Filling the same container to the same level resulted in dramatically different display readings depending on which confiscated pulser was plugged into the dispenser.  Had the district court properly excluded the hearsay, the trial outcome would not have changed because the jury would have still heard testimony indicating a large disparity in the amount of diesel pumped by the two confiscated pulsers.  Thus, any error from the district court's admittance of the container's capacity as testimonial hearsay evidence was harmless.

Based on the overwhelming strength of all the evidence, there was more than sufficient evidence for a rational factfinder to find Perez-Hernandez guilty beyond a reasonable doubt of theft of more than $1,000 worth of diesel fuel.

*The preliminary jury instruction was a correct statement of the law.*

As part of its preliminary jury instructions, the district court instructed the jury:

> "You must not engage in activities or be exposed to any information that might unfairly affect the outcome of this case. Any juror who violates these restrictions I have explained to you jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. *As you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, the Court, and the taxpayers.*" (Emphasis added.)

Perez-Hernandez argues the inclusion of the italicized language was error. The parties did not have an opportunity to object before the preliminary instructions were read to the jury. However, because Perez-Hernandez did not make a contemporaneous objection to the instruction, this court reviews the preliminary instruction for clear error. *State v. Tahah*, 302 Kan. 783, 358 P.3d 819, 826 (2015).

We need not analyze this issue further as our Supreme Court in *Tahah* found the instruction was proper. The district court in *Tahah* gave a preliminary instruction identical to the one given by the district court in this case. Like Perez-Hernandez, Tahah argued the court should expand the holding of *State v. Salts*, 288 Kan. 263, 265-66, 200 P.3d 464 (2009), to preliminary instructions and hold the instruction was error. The Kansas Supreme Court declined to expand the holding of *Salts.* Instead, the court held the language of the preliminary instruction is "both legally and factually accurate in the criminal context as well as the civil." *Tahah,* 358 P.3d at 827. The Court of Appeals is duty bound to follow Kansas Supreme Court precedent. *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). The district court did not err when it gave a preliminary instruction identical to the preliminary instruction recently approved in *Tahah*.

Affirmed.