NOT DESIGNATED FOR PUBLICATION

No. 123,084

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BARBARA BASINGER,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.


MEMORANDUM OPINION


Appeal from Ellis District Court; BLAKE A. BITTEL, judge. Opinion filed October 8, 2021.
Affirmed.


*Charles P. Bradley*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.


*Heather R. Fletcher*, of Johnson Fletcher, LLC, of Hays, for appellee.


Before ARNOLD-BURGER, C.J., SCHROEDER, J., and WALKER, S.J.


PER CURIAM: The Kansas Department of Revenue (KDR) appeals from a district court's decision to overturn Barbara Basinger's license suspension. Two police officers from the Hays Police Department arrested Basinger on suspicion of driving under the influence (DUI) after they responded to a call about a woman needing assistance outside an apartment building. Once they arrived at the Law Enforcement Center, Basinger attempted two breathalyzer tests but failed to provide an adequate sample on both attempts. Under our law, her failed attempts constituted a refusal. The administrative hearing officer affirmed Basinger's license suspension after an administrative hearing, and Basinger later appealed that decision to the district court. Following a hearing, the

1

district court concluded that a physical inability caused by a medical condition unrelated to the ingestion of drugs or alcohol excused Basinger's failure to provide an adequate breath sample and reversed Basinger's license suspension. The KDR appeals, arguing that the district court erred when it made that conclusion. The KDR contends the evidence the district court relied on to make its conclusion is not sufficient competent evidence. After a careful review of the record, we find that the district court's conclusion is supported by substantial competent evidence. We therefore affirm the district court's ruling.

FACTS

On October 20, 2018, Basinger, who was age 72 at the time, lost her balance and fell outside an apartment complex in Hays, Kansas. When she fell, she hit her face on the concrete and started to bleed from her nose, mouth, and lips. Soon after, Hays Police Department Officers Evan Cronn and Kyle Comstock responded to a request for assistance after dispatch notified them an intoxicated female needed help. When they arrived, Basinger had remained on the ground because she had been unable to get up, and a friend had likewise been unable to get her up.

Basinger admitted to the officers that, before she fell, she had consumed alcohol and drove her vehicle. The officers asked Basinger whether she thought she could perform standardized field sobriety tests (SFSTs), but she replied by telling the officers probably not. Officer Comstock said that Basinger informed him she had a little too much to drink. She also could not stand by herself, so the officers also had concerns about her safety if they required her to perform the SFSTs. As a result, Basinger did not perform any SFSTs.

Officers Cronn and Comstock then transported Basinger to the Law Enforcement Center to process her for DUI. At the Law Enforcement Center, Comstock provided Basinger with the DC-70 form, and she agreed to provide a breath sample. Basinger then

tried to provide a sample, but her attempt resulted in a deficient sample. Likewise, Basinger also failed to provide a sufficient sample on her second attempt, and Comstock told Basinger that two failed attempts constituted a refusal. Comstock then completed the DC-27 form and served it on Basinger.

In testimony before the district court, when asked about Basinger's first failed attempt, Comstock stated that Basinger "would go halfway and then as soon as the bar reached halfway, she started taking short little breaths into the tube." Basinger then told Comstock she tried to provide a sample but could not provide a sufficient one, though she kept trying. Comstock said that he and Cronn "kept telling her to put her lips around the mouthpiece, but she kept grinding her teeth on the mouthpiece." Cronn remembered essentially the same thing. He said Basinger would stop in the middle of giving a sample and take shorter breaths. He also said she "would have her teeth clasped around the mouthpiece with her lips removed away from the mouthpiece preventing a proper seal and therefore preventing a proper breath sample being given."

Cronn testified that he could not be sure about the specific injuries Basinger suffered, but he saw dried blood on her face at the Law Enforcement Center. Similarly, he remembered facial injuries around Basinger's nose and lip. Cronn could not recall whether he advised Basinger she may have bit her lip or tongue when she fell, but he said, "If that's what is on the video and the audio, then yeah, that would be accurate." But Cronn remembered giving Basinger water to rinse out her mouth prior to her first attempt to provide a breath sample. Comstock said he checked Basinger's mouth and lips before testing. He said she only had dried blood, no active bleeding, and none of the sores were open during the testing. The mouthpiece of the breathalyzer also did not have any blood on it.

When asked about her injuries at the time of arrest, Basinger testified that she suffered injuries to her nose, mouth, and lips, causing her to bleed. She also said she had

3

swelling on her lips. When asked how she fell, Basinger said she had a balance condition before the incident, attributed in part to her being 72 years old, which caused her to sometimes lose her balance. She said she sometimes needs to stop moving and steady herself. Additionally, on the day of the fall, Basinger said she wore shoes that fit loosely, which contributed to her lack of balance and ultimate fall.

Because the officers believed her failed attempts constituted a test refusal, Basinger had her license suspended. In April 2019, after a hearing, the administrative hearing officer affirmed the suspension of Basinger's license. Basinger later petitioned for review, and in March 2020, the district court held a trial, where it heard the testimony from Cronn, Comstock, and Basinger. The district court also reviewed video footage from the night of the arrest.

The month after, the district court issued its memorandum decision. In the decision, the district court found that Basinger had sustained injuries to her mouth and face because of her fall. Due to the injuries, the district court concluded that Basinger failed to provide an adequate breath sample because of physical inability caused by a medical condition unrelated to the ingestion of drugs or alcohol. Thus, the district court reversed the agency's decision to suspend her license.

The KDR has timely appealed from the district court's decision.

ANALYSIS

*Substantial competent evidence supports the district court's decision.*

On appeal, the KDR first argues that Basinger failed to provide substantial competent evidence to show that a physical inability caused by a medical condition excused her inadequate breath samples.

"A district court's factual findings in a license suspension matter are reviewed for substantial competent evidence." *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019). Our Supreme Court has defined substantial competent evidence as "'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.' In reviewing a court's findings, an appellate court will not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. [Citations omitted.]" 310 Kan. at 469.

The statute at issue in the case is K.S.A. 2020 Supp. 8-1001(p), which states: "Failure of a person to provide an adequate breath sample or samples as directed shall constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs." To the extent that we must interpret the statute, we exercise unlimited review because statutory interpretation presents a question of law. *In re Tax Appeal of BHCMC*, 307 Kan. 154, 161, 408 P.3d 103 (2017).

Part of the KDR's argument involves what constitutes a medical condition. But the KDR fails to define what constitutes a medical condition. Similarly, K.S.A. 2020 Supp. 8-1013, the statute defining various terms used in K.S.A. 8-1001 through 8-1018, and amendments thereto, also fails to define the term. Likewise, Black's Law Dictionary does not define the term "medical condition."

When seeking to construe a statute, the most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Harsay v. University of Kansas*, 308 Kan. 1371, 1381, 430 P.3d 30 (2018). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019).

5

Our statutes define a test refusal as "a person's failure to submit to or complete any test of the person's blood, breath, urine or other bodily substance, other than a preliminary screening test, in accordance with this act, and includes refusal of any such test on a military reservation." K.S.A. 2020 Supp. 8-1013(i). In our case, Basinger bore the burden to demonstrate to the district court that a physical inability caused by a medical condition explained her failure to supply a sufficient breath test. See *Creecy*, 310 Kan. at 469. Neither party disputes that Basinger failed to complete the breathalyzer test based on her two failures to submit a sufficient breath sample. Neither party therefore disputes that her two failed tests are considered a test refusal under K.S.A. 2020 Supp. 8-1013(i).

Nonetheless, KDR disputes the district court's conclusion that a medical condition unrelated to the ingestion of alcohol or drugs caused Basinger's physical inability to provide a sufficient breath sample. The KDR contends that Basinger failed to provide sufficient competent evidence of a medical condition. The KDR contends that *Creecy* "shows us that an injury or episode is not sufficient under K.S.A. 8-1001(p) without supporting medical testimony or evidence."

In *Creecy*, a police officer arrested Creecy for DUI and transported him to the police department for processing and testing. Creecy then started to have trouble breathing. The officer called emergency personnel, who administered oxygen to Creecy, after which he appeared to recover and declined to go to the hospital. After being provided the implied consent advisories, Creecy twice tried to provide a sufficient breath sample but could not provide a sufficient sample either time. During his attempts, Creecy displayed physical signs he struggled to provide the breath samples, and he later suffered another medical episode, falling to the floor and jerking violently. After further medical attention, Creecy eventually regained consciousness. His two unsuccessful attempts were considered a test refusal, which resulted in the suspension of his license. The KDR administrative law judge, the district court, and a panel of our court later affirmed Creecy's license suspension. *Creecy*, 310 Kan. at 456-57.

6

In the district court, Creecy argued he suffered from asthma, which explained his failure to provide a sufficient breath sample. He also provided a certified letter from a physician regarding his diagnosis. But the district court declined to receive any medical evidence to explain Creecy's incidents. The arresting officer, testifying only to his opinion and not as a medical expert, likened Creecy's episode to a panic attack. Ultimately, the district court found no evidence which established that Creecy's episode at the police station constituted an asthma attack. Similarly, the district court found no evidence to support that Creecy was medically incapable of providing a sufficient breath sample. On appeal, our Supreme Court agreed, reasoning that "[i]t was Creecy's burden to show the causal connection between his prior asthma diagnosis and his inability to successfully complete the breath tests that [the officer] administered. He failed to carry that burden and the district court did not err in finding a test refusal." 310 Kan. at 470.

The KDR also relies on *Call v. Kansas Dept. of Revenue*, 17 Kan. App. 2d 79, 831 P.2d 970 (1992). There, a police officer arrested Call for speeding and detected the odor of alcohol. After administering SFSTs, the officer arrested Call for DUI and transported her to the police department. The officer then provided Call the implied consent advisory, and Call agreed to take a breath test. Call then attempted two breath samples, but neither attempt furnished a sufficient sample. Both parties stipulated that Call would testify she blew into the machine as hard as she could, but the administrative hearing officer found that Call refused to submit to and complete the breath test and ordered Call's license to be suspended for one year. Call appealed to the district court, which found that Call had failed the test rather than refused the test.

On appeal, the KDR argued Call refused the test rather than failed the test. A panel of our court agreed with the KDR, finding that

> "failure to provide a deep lung breath sample required for testing by the intoxilyzer
> machine constitutes a test refusal, unless the person providing the sample can show that

the failure was due to a physical inability caused by a medical condition unrelated to any ingested alcohol or drugs. See K.S.A. 8-1001(f)(2) [now codified at K.S.A. 2020 Supp. 8-1001(p)]. The stipulated evidence showed that Call provided a deficient sample. Call's only evidence of her physical inability to complete the test was the stipulation that she would testify she blew as hard as she could. There is no medical evidence in the record showing Call's inability was of a medical nature.

. . . .

"K.S.A. 8-1001(f)(2) [now codified at K.S.A. 2020 Supp. 8-1001(p)] places the burden on the motorist to show his or her refusal was based on a physical inability of a medical nature. Call's statements, standing alone, were insufficient to meet that burden." 17 Kan. App. 2d at 83-84.

In *Deines v. Kansas Dept. of Revenue*, No. 110,680, 2015 WL 2342352 (Kan. App. 2015) (unpublished opinion), Deines refused to perform any SFSTs or a preliminary breath test after a police officer pulled him over for running a stop sign and noticed multiple clues of impairment. After being arrested and transported to the police station, Deines refused to attempt the evidentiary breath test. In district court testimony, Deines offered several innocent explanations for his behavior, including that his tendons shrunk during a fever associated with spinal meningitis, he lacked full mobility in his joints, he suffered from depth perception issues caused by a lack of vision in his right and limited vision in his left eye, had only limited breathing capacity caused by chronic obstructive pulmonary disease (COPD), and had lingering effects from a stroke he had once suffered. Ultimately, the district court affirmed the suspension of Deines' license.

On appeal, Deines argued the district court erred when it found that he failed to prove a medical condition rendered him physically incapable of performing the evidentiary breath test. A panel of our court concluded that Deines limited the potential evidence of inability by failing to attempt the breath test. 2015 WL 2342352, at *5-6. Compared to *Call*, where the appellant attempted but could not provide a sufficient breath test sample, Deines' only evidence of an attempt "was [his] testimony that he had, with

difficulty, completed an evidentiary breath test about 15 years before the traffic stop. Deines' testimony that he could not complete the test offered by [the officer] was, absent other competent evidence, of even less probative value than the situation considered in *Call*." *Deines*, 2015 WL 2342352, at *6.

Deines also presented medical records to corroborate his physical inability, but the district court did not admit the records because Deines failed to accompany the records with expert medical testimony. The panel of this court found that the district court correctly excluded the medical reports because the records contained medical data far beyond common knowledge. Moreover, the lack of expert testimony provided another reason for the district court to exclude the medical records because they provided little value without evidence of the pulmonary capacity required to complete an evidentiary breath test. Thus, the panel concluded "Deines' failure to submit to the test was therefore a test refusal, and there were proper grounds for the suspension of his driver's license." 2015 WL 2342352, at *6-7.

Based on these cases, the KDR argues that this court should find that "unsubstantial evidence was presented to show that [Basinger's] injury caused an inability to complete testing." The KDR also contends that we should disregard the evidence of Basinger's injuries because she presented no medical testimony about those injuries or the effects those injuries had on her ability to submit a sufficient breath sample.

But the cases cited by the KDR are distinguishable from Basinger's case. In *Call*, the "parties stipulated that Call would testify she blew into the machine as hard as she could," but no other evidence demonstrated any extenuating circumstances for the failure to provide a sufficient breath sample—Call simply could not provide one. 17 Kan. App. 2d at 80. Thus, she failed to carry her burden to show that a physical inability of a medical nature caused her failure to provide a sufficient breath sample. 17 Kan. App. 2d at 84.

In *Creecy* and *Deines*, both claimed to suffer from diagnosed medical conditions. Creecy claimed to suffer from asthma, while Deines claimed he suffered effects from several medical conditions, including COPD, a stroke, and spinal meningitis. Creecy provided a certified letter regarding his asthma diagnosis but provided no evidence that the episode at the police station constituted an asthma attack. *Creecy*, 310 Kan. at 470. Deines sought to introduce medical records in district court, but the district court excluded such evidence because it lacked foundation and medical testimony. *Deines*, 2015 WL 2342352, at *6. As a result, both failed to satisfy their burdens.

Here, Basinger did more than stipulate that she blew into the breathalyzer as hard as she could. See *Call*, 17 Kan. App. 2d at 80. Cronn, Comstock, and Basinger all testified that Basinger suffered injuries to her nose, lips, and mouth because of her fall, which the video footage also corroborated. Unlike in *Creecy* and *Deines*, Basinger did not attribute her physical inability to any diagnosable medical condition like asthma or COPD—she attributed her physical inability to the injuries to her face and mouth. The district court considered this testimony, as well as video footage, and concluded that the injuries to Basinger's mouth prevented her from providing a sufficient breath sample.

To further demonstrate that Basinger's testimony constitutes insufficient evidence, the KDR cites the following quoted passage:

> "'In Kansas, a lay witness may testify about the external appearances and manifest medical conditions that are readily apparent to anyone. However, lay witnesses are not competent to provide reliable testimony about medical matters beyond the common knowledge of lay persons, or those that are not readily apparent such as medical diagnosis or the effects of possible medical conditions. [Citations omitted.]' *State v. McFadden*, 34 Kan. App. 2d 473, 478, 122 P.3d 384 (2005)."

The KDR then argues that, based on *McFadden* and K.S.A. 2020 Supp. 60-456(a), the district court should have excluded such testimony. But at the hearing in district court the KDR did not object to Basinger's testimony pertaining to the injuries she suffered. It only objected to Basinger's testimony about a balance condition she claimed to have. K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). Additionally, the KDR only raises the evidentiary issue in passing, which we may treat as abandoned. See *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (point raised incidentally in brief and not argued therein is also deemed abandoned).

Even so, the KDR fails to explain why Basinger's testimony would not fit within K.S.A. 2020 Supp. 60-456(a), which states:

> "(a) If the witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds: (1) Are rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge within the scope of subsection (b)."

Basinger's opinion about her injuries reflected her perception, not any scientific or technical knowledge. In fact, in addition to Basinger, both officers testified about the apparent nature of Basinger's injuries. The testimony about those injuries did not require any knowledge beyond the common knowledge of a lay person. See *McFadden*, 34 Kan. App. 2d at 478. Based on these facts, the district court concluded that the problems Basinger "was having with her mouth injury were obvious."

Essentially, the KDR is asking us to redetermine questions of fact which were decided by the district court. But as an appellate court we do not reweigh evidence, assess witness credibility or resolve conflicting evidence. *State v. Betancourt*, 301 Kan. 282,

11

290, 342 P.3d 916 (2015). After viewing the video in evidence and listening to the testimony of the witnesses, the district court obviously believed Basinger's testimony and was convinced that she was suffering from visible injuries which made it impossible for her to provide the requested breath samples. And under a substantial competent evidence standard, we only look to see if there is evidence in the record which supports the district court's factual findings. *Creecy*, 310 Kan. at 469. Based on the standard of review, we find that Basinger satisfied her burden to demonstrate that her failure to provide an adequate breath sample "was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs." See K.S.A. 2020 Supp. 8-1001(p); see also *Creecy*, 310 Kan. at 470 (burden to show physical inability is on individual who failed to provide adequate test sample).

*The district court correctly found that Basinger's injuries were unrelated to the consumption of alcohol or drugs.*

As its second issue on appeal, the KDR also argues that Basinger failed to show that her fall and resulting injuries had no relation to the ingestion of alcohol. Specifically, the KDR argues that "[a]lthough Appellee testified that her injuries were unrelated to the consumption of alcohol, all other evidence, the officers' testimony, Appellee's testimony, common logic, and case precedent, refute this assertion."

To assist in defining "unrelated to any ingested alcohol or drugs" in K.S.A. 2020 Supp. 8-1001(p), the KDR relies on *Moreland v. Kansas Dept. of Revenue*, No. 108,681, 2013 WL 2972601 (Kan. App. 2013) (unpublished opinion). There, Moreland drove a vehicle which was involved in a one-vehicle accident. A witness told an officer of the El Dorado Police Department that Moreland failed to stop at a stop sign and drove through an intersection, striking a concrete wall. The officer then called for medical assistance to transport Moreland to the hospital after noticing blood around his face.

While on a stretcher, the officer noticed Moreland falling asleep. Similarly, Moreland continued to fall asleep while emergency room staff attempted to treat him. In the emergency room, the officer provided Moreland a copy of the implied consent advisory and read it to him, but she noticed Moreland had fallen asleep when she completed reading the form. She then woke him. Eventually, the officer asked Moreland two times whether he would submit to a blood test. Both times, Moreland replied that he "'didn't know what to do'" and fell asleep. 2013 WL 2972601, at *1. As a result, the officer concluded Moreland had refused the requested blood test.

The KDR suspended Moreland's license based on his refusal to submit to and complete the requested blood test. The district court affirmed the decision of the administrative hearing officer, concluding Moreland failed to consent to the blood test, which amounted to a test refusal. On appeal, Moreland challenged whether he rescinded his refusal.

In resolving the issue, the *Moreland* panel cited the same portion of the statute at issue in this case. The panel then concluded:

> "Moreland failed to complete the requested blood test and provide an adequate sample when he twice told [the officer] he 'didn't know what to do' and fell asleep. In his stipulated facts, Moreland offered no evidence to support that such responses were 'caused by a medical condition unrelated to any ingested alcohol or drugs.' Although Moreland suffered a large scalp laceration, a right frontal scalp hematoma, and a chest contusion, there were no facts suggesting these injuries prevented Moreland from properly responding to [the officer's] requests." 2013 WL 2972601, at *2.

Simply put, the KDR's reliance on *Moreland* is inapt because this case is distinguishable for many reasons. First, this case does not involve an initial refusal nor a rescission of a refusal—Cronn, Comstock, and Basinger all testified at trial that Basinger never refused to perform a breathalyzer test and cooperated throughout the process.

Second, the injuries suffered in both cases are different. Moreland suffered a scalp laceration, right frontal scalp hematoma, and a chest contusion, while Basinger suffered injuries to her nose, lip, and mouth. Third, and relatedly, the testing procedures employed by the officers differed. In *Moreland*, the officer sought to obtain a sample of Moreland's blood. Here, Cronn and Comstock sought to obtain a breath sample. Finally, Cronn, Comstock, and Basinger all testified to the injuries Basinger suffered because of her fall, while Moreland offered no evidence that his injuries prevented him from completing the requested blood test. Cronn specifically admitted the possibility that someone who suffered a facial injury might be unable to create a sufficient seal around the breathalyzer. See 2013 WL 2972601, at *2.

The KDR asserts that "Moreland was unable to prove that his injuries were unrelated to the consumption of alcohol." But such assertion mischaracterizes the panel's opinion. In its analysis, the panel only discussed Moreland's injuries in the single paragraph quoted above. As evidenced from the paragraph, it would be more accurate to say that Moreland failed to prove that his injuries prevented him from complying with the officer's multiple requests for a blood sample, not that he failed to prove his injuries were unrelated to alcohol consumption. See 2013 WL 2972601, at *2.

Returning to our case, it is useful to revisit the timeline of events. During the night of October 20, 2018, Basinger fell to the ground. Then, Officers Cronn and Comstock received a request for assistance and responded to Basinger's apartment. Dispatch had informed the officers that an intoxicated female needed help. After she fell, Basinger could not get up from the ground, so she remained there until Cronn and Comstock arrived. When they encountered Basinger, she had facial injuries. She told the officers she had consumed alcohol and driven her vehicle, so they placed her under arrest and transported her to the Law Enforcement Center.

Before placing her under arrest, the officers asked Basinger whether she thought she could perform SFSTs, but she replied by telling the officers probably not. Comstock said that Basinger mentioned she had a little too much to drink. Comstock also said that Basinger could not stand by herself, so the officers also had concerns about her safety if they required her to perform the tests. Aside from these comments, neither officer provided testimony regarding how or why Basinger fell.

But Basinger testified that she simply fell. She also testified that she had a balance condition before the incident, which caused her to sometimes lose her balance. She said she sometimes needs to stop moving and steady herself. Additionally, on the day of the fall, Basinger said she wore shoes that fit loosely, which contributed to her lack of balance and ultimate fall.

While the KDR challenged the admissibility of Basinger's testimony regarding her balance condition during trial, on appeal it does not argue the district court erred by allowing such testimony. Thus, the KDR has abandoned the issue. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (issues not adequately briefed are deemed waived or abandoned).

In sum, the district court considered the testimony provided from Cronn, Comstock, and Basinger during trial. The district court also reviewed video footage. From this, the district court made a factual determination and concluded that Basinger's injuries were unrelated to the ingestion of alcohol or drugs. See K.S.A. 2020 Supp. 8-1001(p).

As in the first issue, the KDR is asking this court to redetermine a question of fact decided by the district court, which we cannot do under a substantial competent evidence standard. *Creecy*, 310 Kan. at 469. Since there is substantial competent evidence

supporting the district court's determination that Basinger's injuries were unrelated to the consumption of alcohol or drugs, we affirm the district court's ruling.

Affirmed.