(264 P.3d 1027)
No. 104,364

STATE OF KANSAS, *Appellee*, v. TROY OTTINGER, *Appellant*.

Opinion filed October 14, 2011.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MARQUARDT, P.J., BUSER and ATCHESON, JJ.

MARQUARDT, J.: Troy Ottinger appeals the district court's revocation of his probation in case 08CR3127, the grant of the State's motion in limine, and his conviction and sentence for aggravated escape in case 09CR2900. The district court ordered Ottinger to serve his underlying 13-month prison sentence in case 08CR3127 and sentenced him in case 09CR2900 to a consecutive sentence of 14 months in prison. We affirm.

On January 20, 2009, Ottinger pled no contest in case 08CR3127 to two counts of forgery and two counts of identity fraud. Even though the district court sentenced Ottinger to 13 months in prison, he was granted probation for 18 months. As conditions of his probation, Ottinger was ordered to complete the Sedgwick County Community Corrections Program at the Adult Residential Center (the Center), have no contact with his wife, a codefendant in the case, and not possess or consume alcohol or drugs.

Ottinger entered the Center on July 29, 2009, and was ordered to stay at the Center for a minimum of 120 days. He was not allowed to leave unless he had permission from a supervisor. On August 27, 2009, Ottinger met with Intensive Supervision Officer Kim Haas and asked for permission to leave the facility in order to acquire a bicycle for travel to and from work. At the meeting, Haas noted that Ottinger appeared "jumpy and had trouble standing still." Haas suspected that Ottinger was using drugs, and a UA test confirmed Haas' suspicion. Notwithstanding the positive UA, Hass granted Ottinger permission to leave the facility from 8 a.m. to 11 a.m. the next day to get a bicycle.

Ottinger left the facility at 7:53 a.m. on August 28, 2009. When Ottinger did not return at 11 a.m., a warrant was issued for his

arrest. Ottinger was arrested on September 29, 2009, and was charged in case 09CR2900 with aggravated escape from custody.

Before Ottinger's preliminary hearing, the State filed a motion in limine seeking to prohibit Ottinger from testifying that he did not return to the Center because he needed to care for his wife and son. He claimed his wife was suicidal; therefore, the defense of compulsion applied. On November 18 and 19, 2009, the district court held a combined preliminary hearing and a hearing on the State's motion in limine.

The district court granted the State's motion in limine after it determined that Ottinger failed to meet all of the five conditions established in *State v. Irons*, 250 Kan. 302, 307-09, 827 P.2d 722 (1992). Citing *State v. Kelly*, 21 Kan. App. 2d 114, 115, 896 P.2d 1101, *rev. denied* 258 Kan. 861 (1995), the district court also determined the compulsion defense was not available to an escapee when the imminent threat is not to the escapee but to a third party.

The district court found Ottinger (1) had many opportunities to, but did not, lodge a complaint to authorities, (2) provided no evidence that the result of any complaint would have been illusory, and (3) failed to contact authorities when he attained a position of safety from the imminent threat.

On January 14, 2010, the aggravated escape from custody case proceeded to a bench trial on stipulated facts. The stipulated facts in their entirety were:

"1. On March 24, 2009, Troy P. Ottinger ('Defendant') was being held in lawful custody at the Sedgwick County Department of Corrections Residential and Service Center ('Residential') in Wichita, Sedgwick County, Kansas.

"2. Defendant was being held at Residential on a conviction of a felony.

"3. The Department of Corrections officials at Residential intended to exercise actual or constructive control over Defendant in a manner that restrained Defendant's liberty while he was being held at Residential.

"4. Defendant was to remain under the care and custody of Residential until September 24, 2010.

"5. Defendant was given a three hour pass for August 28, 2009 to leave Residential and go to Forever Crowned at 2046 East 9th, Wichita, Sedgwick County, Kansas.

"6. On August 28, 2009 at approximately 7:53 A.M. Defendant left Residential to go to Forever Crowned located at 2046 East 9th, Wichita, Sedgwick County,

Kansas. Defendant was required to return to Residential at 11:00 A.M. on August 28, 2009.

"7. Defendant never went to Forever Crowned.

"8. Defendant failed to return to Residential on August 28, 2009 or anytime thereafter.

"9. Defendant was arrested on September 29, 2009 in Hutchinson, Reno County, Kansas and transported back to Sedgwick County, Kansas."

Ottinger acknowledged the district court's order granting the State's motion in limine; however, he requested a continuing objection to the order. He proffered that he left the Center out of concern for his wife who suffered from various mental health issues, was addicted to methamphetamines, and had attempted suicide several times in the past. Further, he claimed he could not tell an administrator at the Center because they would not let him leave. A condition of Ottinger's probation was that he was prohibited from having any contact with his wife. If he had asked for a pass to see his wife, Haas testified that it would not have been granted.

Ottinger testified that he located his wife in a drug house 4 days after leaving the Center but claimed he could not contact the Center because his wife would have viewed that as a betrayal. He testified that he intended to transport his wife to the state of Washington after she got some money so she could see her kids. However, on September 29, 2009, Ottinger and his wife were arrested before they could make the trip. Based on the stipulated facts and the evidence presented at trial, the district court found Ottinger guilty of aggravated escape from custody.

At a joint probation revocation and sentencing hearing, the district court stated that Ottinger violated his probation by testing positive for amphetamines, by failing to return to the Center, and by committing aggravated escape from custody while on probation. The district court ordered Ottinger to serve his prison sentence of 13 months in case 08CR3127 and consecutive 14 months in case 09CR2900. Ottinger timely appeals.

## COMPULSION DEFENSE

On appeal, Ottinger argues the district court deprived him of his

constitutional right to a fair trial and his right to present a compulsion defense when it granted the State's motion in limine.

The question of whether the defense of compulsion is available to a defendant is an issue of law over which an appellate court has unlimited review. *Kelly*, 21 Kan. App. 2d at 115; *State v. Pichon*, 15 Kan. App. 2d 527, 536, 811 P.2d 517, *rev. denied* 249 Kan. 778 (1991).

Generally, the compulsion defense is a recognized statutory defense in Kansas under limited circumstances stated in K.S.A. 21-3209:

"(1) A person is not guilty of a crime other than murder or voluntary manslaughter by reason of conduct which he performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if he reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct.

"(2) The defense provided by this section is not available to one who willfully or wantonly places himself in a situation in which it is probable that he will be subjected to compulsion or threat."

In *Pichon*, a panel of this court examined *People v. Lovercamp*, 43 Cal. App. 3d 823, 831-32, 118 Cal. Rptr. 110 (1974), and adopted five conditions that must exist before an escaped prisoner may claim the defense of compulsion:

" '(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

" '(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which makes any result from such complaints illusory;

" '(3) There is no time or opportunity to resort to the courts;

" '(4) There is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and

" '(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.' " *Pichon*, 15 Kan. App. 2d at 533.

In *Irons*, our Supreme Court adopted the *Pichon* conditions but replaced the words "immediate threat" with "imminent threat" in order to conform to K.S.A. 21-3209.
250 Kan. at 307-09.

Later, in *Kelly*, a panel of this court cited several cases including *Lovercamp*, *Pichon*, and *Irons* to hold that the compulsion defense

does not apply where a third party, not the inmate, is faced with a specific threat of imminent infliction of death or great bodily harm. The *Kelly* court concluded that (1) providing an escapee with an excuse to leave anytime a family member is perceived to be in danger would invite anarchy; (2) allowing an escapee to leave confinement to save a family member from harm disregards the balancing test in *Lovercamp*; (3) the public interest cannot be served by excusing an inmate, with "all manner of felonies," from escaping from prison to aid a family member; and (4) imprisonment restricts an inmate's freedom and his or her ability to function as a member of a family. 21 Kan. App. 2d at 117-18.

In *Kelly*, the defendant absconded from a Wichita release facility. Instead of going to work, Kelly stopped to see his wife and son. At his wife's house, Kelly encountered a man claiming to be his wife's husband, the house was "a total pig sty," his son was crying in his crib, the sink was full of dirty dishes, and the refrigerator was "virtually empty." Kelly called his employer and told him that he was taking his son to the hospital. Instead, Kelly searched for his wife and went to a friend's house across the street from his wife's house to watch for her return. Kelly was arrested 5 days later and was charged with aggravated escape from custody.

At Kelly's trial, the district court refused to instruct the jury on the defense of compulsion because it determined that the threat to Kelly's child was not imminent and, therefore, Kelly did not meet the first condition in *Pichon*. The district court, however, stated that "it had 'no problem' extending the first condition to include threats to third parties." *Kelly*, 21 Kan. App. 2d at 116. On appeal, a panel of this court explicitly determined that "the compulsion defense does not apply where the imminent threat is not to the inmate but to third parties." 21 Kan. App. 2d 114, Syl.

Ottinger claims "the prior case law limiting the compulsion defense in aggravated escape from custody cases was wrongly decided." We agree. Ottinger contends that by enacting K.S.A. 21-3209, the legislature clearly knew how to limit the compulsion defense to certain parties and to exclude certain crimes.

Ottinger's claims have merit. Although *Irons* adopted *Pichon*'s five conditions that must exist before an escapee can claim the

defense of compulsion, neither *Irons* nor *Pichon* discussed the situation when the escapee absconds from custody based on a threat of imminent infliction of death or great bodily harm to a third party.

Second, the plain language of K.S.A. 21-3209(1) does not preclude an escapee from its using the compulsion defense if the escapee "reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct." When a statute is plain and unambiguous, an appellate court may not read into the statute, or to add something not readily found in the statute. *State v. Trautloff*, 289 Kan. 793, 796, 217 P.3d 15 (2009).

Neither *Irons* nor *Pichon* deals with the situation where the threats of death or great bodily harm were to an escapee's family member, those cases only deal with threats to the escapee. *Kelly* improperly limited the compulsion defense to a situation where the threats are to the escapee. The *Kelly* decision contradicts the language of K.S.A. 21-3209. The statute allows the use of the compulsion defense if the inmate "reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister." K.S.A. 21-3209(1).

Ottinger claims he refused to return to the Center because he believed his wife—a third party—might commit suicide. According to the plain language of the statute, he was entitled to have the defense of compulsion "if he reasonably believes that death or great bodily harm will be inflicted upon . . . his spouse." K.S.A. 21-3209(1). The problem for Ottinger is that he was ordered as a part of his probation to have no contact with his wife—a codefendant in his case.

Also, Ottinger failed to establish facts to support his compulsion defense. Neither his wife's testimony at the limine hearing, nor his proffered testimony before the bench trial, was sufficient to support a reasonable belief that his wife was in imminent danger. His wife never communicated to him she was actively contemplating suicide. There is no evidence, other than Ottinger's statement, that his wife was intending to take her life at the time that he escaped. The district court did not err in granting the State's motion in

limine. Accordingly, we affirm the district court's decision on this issue.

## PROBATION REVOCATION

Probation is an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege, not as a matter of right. *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). Once the State has proven a violation of the conditions of probation, probation revocation is within the sound discretion of the district court. *State v. Graham*, 272 Kan. 2, 4, 30 P.3d 310 (2001). A district court abuses its discretion when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district court abused its discretion. *State v. Gant*, 288 Kan. 76, 81-82, 201 P.3d 673 (2009).

Ottinger claims the district court abused its discretion in revoking his probation "because his circumstances sufficiently outweighed any violations of probation." Ottinger cites *Swope v. Musser*, 223 Kan. 133, 573 P.2d 587 (1977), to argue the revocation of probation presupposes any mitigating factors do not outweigh the violations. However, *Swope* merely stands for the proposition that a district court cannot arbitrarily revoke a defendant's probation unless that defendant has violated the terms of that probation. 223 Kan. at 136. Consequently, *Swope* provides him no relief.

Here, Ottinger violated the conditions of his probation in four different ways: (1) he tested positive for amphetamines; (2) he failed to complete the Center's program; (3) he admitted to having contact with his wife; and (4) he committed a felony while on probation. Based on the record on appeal, the district court's decision to revoke Ottinger's probation was not arbitrary, fanciful, or unreasonable. Accordingly, the district court did not err in revoking Ottinger's probation and ordering him to serve his underlying sentence.

## USE OF CRIMINAL HISTORY IN SENTENCING

Finally, Ottinger contends the use of his criminal history for sentencing purposes, without proving his criminal history to a jury

beyond a reasonable doubt, increased the maximum possible penalty for his primary offense in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Ottinger acknowledges this issue has already been decided adversely to him in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), and merely wishes to exhaust his state remedies.

This court, however, is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. See *State v. Dawson*, 43 Kan. App. 2d 800, 803, 231 P.3d 582, *rev. denied* 290 Kan. 1097 (2010). There is no indication our Supreme Court is departing from its ruling in *Ivory*. See *State v. McCaslin*, 291 Kan. 697, 731-32, 245 P.3d 1030 (2011) (refusing to overrule *Ivory*). Accordingly, the district court did not err in using Ottinger's criminal history in sentencing him.

Affirmed.