NOT DESIGNATED FOR PUBLICATION

No. 112,314

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES L. DAVIDSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH MAUGHAN, judge. Opinion filed November 6, 2015. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam*:  A jury convicted Charles L. Davidson of aggravated assault, two counts of criminal damage to property (tire slashing), and two other felonies. The judge sentenced him to serve 45 months in prison.

These crimes arose because of ill feelings over the repair of a car. Davidson gained possession of Shayla Stinson's car. At the time, Davidson was dating Elena Delacadena, who was Stinson's close friend and roommate. Delacadena had borrowed Stinson's car in the past when they were roommates.

1

Stinson demanded the return of her car, but Davidson refused because he claimed Stinson owed him for repair work he had done on the car. Stinson refused to pay as she had not requested any repairs and maintained nothing was wrong with the car. Eventually, Stinson did recover the car with police assistance.

On the evening of July 6, 2013, Stinson and her new roommate, Sarah Ast, had some friends over to socialize, play games, and hang out. Two of the friends wanted to leave early on the morning of July 7, but their car tires had been slashed.

Ast, upset about the tire slashing, went for a drive with her boyfriend Jarred Barrentine. When they returned, they saw an unknown white male and unknown black male standing in Ast's driveway. The men walked away.

Later, Ast, Barrentine, and Matheau Bayless were sitting outside on the front porch. They saw a white car parked down the street near a street lamp with three people—a white male, a black male, and a white female—outside of the car, switching seats. The two males were the same two that Ast and Barrentine had seen earlier in front of the house. Bayless recognized the white male and female as Davidson and Delacadena.

Bayless saw Davidson get into the driver's seat, Delacadena into the front passenger seat, and the black male into the rear of the vehicle. According to Bayless, Davidson was not stumbling or having a difficult time getting into the car. Bayless said that as the car approached the house, the car sped up and a black object and a black arm came out of the rear driver's side window of the car. Bayless thought the object might be a gun and a shooting was going to occur. Bayless yelled for everyone to get inside the house and get down. Bayless pushed one friend into the house. Bayless got inside the house and lay down on the floor. Bayless testified that he was in fear for his life at this point. Bullets were heard striking the house.

2

The friends called the police. Bayless was interviewed at the scene and told police officers that he was not scared during the shooting. Bayless later testified at trial that he was in shock that night when he spoke with police. Bayless testified he was in fact scared, later knowing he had just been in a shooting. Bayless told police officers that Davidson and Delacadena were in the white car involved in the shooting.

Police officers went to Davidson's house. The officers were given permission to enter Davidson's home by Davidson's roommate. Officers found Davidson and Delacadena asleep in Davidson's room. A firearm, car keys, and a pocket knife lay on a nightstand next to the bed. Later forensic testing determined that the firearm matched the casings found outside of Stinson's house.

*Delacadena gave the police a statement that morning.*

During a police interview 5 to 6 hours after the shooting, Delacadena told the officers that on the night of the shooting, she and Davidson drove over to Stinson's house because Davidson was angry with Stinson taking her car back. Davidson said he made an agreement with Stinson's dad on the car and stated, "I want my fucking car." They could not locate the car. Davidson slashed the tires of two vehicles located on the street near Stinson's house. Delacadena could hear air coming out of the tires as Davidson slashed them. She described the knife that Davidson used to slash the car tires.

According to Delacadena, she and Davidson joined with David McCray, an African-American male. A couple of hours after the tire slashing, the three drove to Stinson's house again. Delacadena was driving. Davidson wanted to shoot up Stinson's house that night. Davidson said, "I want to fucking beat these mother fuckers' asses" and "I will blow this house up." Delacadena saw that Davidson had a gun and tried to talk Davidson and McCray out of shooting anyone. Davidson told Delacadena to stop driving and park the car so that he could drive. Davidson then drove by Stinson's house, leaned

3

his seat back, pointed a gun out of the back driver's side window (because the front driver's side window in the car did not work), and shot at the house seven times. The gun belonged to Davidson. At the end of the interview, Delacadena asked the officers not to tell Davidson that she had given this account to them. She had not had an opportunity to discuss with Davidson what she should say to police.

Delacadena later pled guilty to her involvement in the shooting and received probation with an order not to make contact with Davidson. Delacadena broke her no contact order and was ordered to serve her sentence. Delacadena and Davidson were engaged to be married by Davidson's trial date.

*At trial Delacadena gave a different story.*

At Davidson's trial, Delacadena testified that she lied during her interview with police on July 7. She explained how and why she lied:

- Delacadena said she lied to protect herself and McCray, who was a friend of the family whom she had known "a little bit longer" than Davidson.
- She and Davidson had been heavily drinking on the night of July 6. She drank four or five shots of alcohol, and Davidson drank a bottle and a half of vodka that night.
- She and Davidson drove over to Stinson's house to look for Stinson's car. Delacadena was driving because she did not let Davidson drive her mom's car.
- Delacadena slashed the vehicle tires in front of Stinson's house. Davidson was drunk and passed out in the passenger seat of her car when she punctured the tires. Delacadena heard air coming out of the tires because she was the one who punctured them.

4

She went on to state that she and Davidson drove back to her house where they met McCray. There, Davidson drank more alcohol. Davidson and McCray finished off the last bottle and a half of vodka. Davidson was slurring his words and said, "I want my car back," and "I'm going to blow this house up" in a drunken stupor. Delacadena did not believe he was serious; it was blustering drunk talk. The three drove back to Stinson's house just to look for Stinson's car.

In this version of Delacadena's story, she was driving, Davidson was in the passenger seat, and McCray was behind the driver's seat. Davidson was going in and out of consciousness when Delacadena drove by Stinson's house. McCray rolled down the back window and shot at the house. After the gunshots, Davidson came to, his eyes got really big, and he started banging on the car window. Delacadena screamed at McCray, "Why the fuck did you just do that?" Delacadena then took Davidson back to his house and she and McCray carried him into his house because he was still too drunk to walk.

*The evidence was sufficient to convict Davidson of aggravated assault.*

Davidson challenges the sufficiency of the evidence on both charges—aggravated assault and criminal damage to property. When the sufficiency of evidence is challenged in a criminal case, this court reviews all the evidence in the light most favorable to the prosecution and must be convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). In determining whether there was sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or assess the credibility of witnesses. 299 Kan. at 525. It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Davidson hangs his hat on Bayless' statement to the police right after they came to the scene that the shooting did not scare him. Of course, the definition of assault is "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2014 Supp. 21-5412(a). And, aggravated assault is assault committed with a deadly weapon. K.S.A. 2014 Supp. 21-5412(b)(1).

The jury heard inconsistent testimony regarding whether Bayless was in fear of immediate bodily harm at the time of the shooting. Bayless told police the night of the shooting that he was not scared during the shooting. But, Bayless explained to the jury that he was in shock when he spoke to police and that this statement was untrue. The following exchange occurred:

"Q. Well, today in open court you're testifying that once you got into the house, had the door closed, you were in fact in fear of being shot; is that fair?
"A. Yes.
"Q. Okay. But that's not what you told Officer Moses that morning, was it?
"A. No. Because I was in shock that night.
"Q. Did you tell him you were in shock?
"A. No, I told him I wasn't scared.
"Q. Told him you weren't scared. And he asked you again if you were afraid of being hurt or killed and what'd you tell him?
"A. Told him I was scared for my family and friends there.
"Q. You told him you were not; isn't that correct?
"A. Yes, at that moment I did, and that was because I was in shock at that moment. Because later on I was scared knowing that I'd just been in a shooting.
"Q. All right. So what you told Officer Moses, that you weren't afraid, you weren't being truthful with the officer; is that correct?
"A. In that sense. At the time I was in shock, and if that's what you would consider, yes."

Bayless also testified that when he first saw the black object come out of the window he had a feeling it was a gun and that he was in "fear for [his] life at that point."

6

Bayless yelled for everyone to "get in the house" and "get down." Barrentine testified that Bayless shoved him inside the house. Bayless himself jumped inside the house and lay down on the floor.

Viewing Bayless' testimony as a whole, a reasonable jury could easily find he was in reasonable fear of being shot at the time he saw a black object coming out of the car window. Bayless testified that he was in fear for his life. His testimony was corroborated by his actions just before the shooting. Bayless yelled for everyone to get inside and get down. Bayless pushed one friend into the house. Bayless himself went inside and lay flat on the floor. This court cannot reweigh the credibility of Bayless' statements to police versus the testimony given at trial; credibility determinations are reserved for the jury. See *Williams*, 299 Kan. at 525. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence that Bayless was in reasonable apprehension of immediate bodily harm.

*The evidence was sufficient to prove Davidson slashed the tires.*

The jury heard two versions of the events: the version that Delacadena told police a few hours after the events, and the version that Delacadena told on the witness stand. Delacadena originally told police that she saw Davidson slash the car tires. She gave this account to the police without having an opportunity to consult with Davidson about what she should say to the police.

In contrast, Delacadena testified at trial that she slashed the car tires while Davidson was passed out in the front seat from heavy drinking. The jury heard testimony that Delacadena was engaged to Davidson sometime between the incident on July 7 and Davidson's trial. The jury also heard testimony of several witnesses that saw a white male, identified by Bayless as Davidson, walking around that night, not stumbling.

7

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence of Davidson's guilt. Delacadena's original accusation to police that Davidson slashed the car tires is direct evidence of Davidson's guilt. Delacadena's statements to the police were made without consulting Davidson about what she should say. That version of events is consistent with other witness' testimony that Davidson was walking around that night rather than passed out in the car. Davidson invites this court to reweigh the credibility of Delacadena's conflicting versions of the events. We decline the invitation. See *Williams*, 299 Kan. at 525.

We hold there was sufficient evidence presented to support both convictions.

Finally, Davidson argues that the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because: (1) the district court sentenced him to an aggravated sentence in the grid box without requiring that the aggravating factors be proved to a jury; and (2) the district court used his prior convictions to increase his sentence without requiring the prior convictions be proved to a jury.

Davidson acknowledges that the Kansas Supreme Court considered and rejected similar arguments in *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008), and *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), but raises the issues to preserve for federal review. Since there is no indication that our Supreme Court is departing from its holdings in *Johnson* or *Ivory*, we are duty bound to affirm. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012).

Affirmed.