NOT DESIGNATED FOR PUBLICATION

No. 115,030

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

FELANDICE L. REED,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed March 17, 2017. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., ATCHESON, J., and STUTZMAN, S.J.

STUTZMAN, J.: In August 2015, a Sedgwick County jury convicted Felandice Reed of battery against a law enforcement officer and interference with law enforcement. Reed appealed, raising three claims of error. First, he alleges the trial court erred in denying his pretrial motion for new counsel. Second, Reed argues the court committed clear error in failing to instruct the jury that his actions had to be the proximate cause of the law enforcement officer's injuries to prove the battery charge. Finally, Reed asserts the instruction the court gave to the jury on the burden of proof was clearly erroneous. We find no error by the district court and affirm.

1

FACTS AND PROCEDURAL BACKGROUND

The charges against Reed arose from events on March 13, 2015, in Wichita. On that date, Deputies Douglas Robertson and Sandy Shiblom of the Sedgwick County Sheriff's Department, both in uniform, went to Reed's second-floor apartment to arrest him on an outstanding warrant. Shiblom went upstairs to the front door of the apartment; Robertson walked around at ground level to cover any potential exit from the balcony on the back or the windows on the side.

After Shiblom knocked on the front door of Reed's apartment, she saw someone open the door slightly and peek out. She did not get a good look at the man's face but could see he was wearing a black shirt and pants. The man immediately shut the door and she heard it lock. She shouted through the door that they had a warrant for his arrest and communicated the information about that initial encounter to Robertson. A few seconds later, Robertson saw Reed open the sliding glass door at the balcony and look out. Robertson told him to freeze and put his hands up, but Reed looked at Robertson, pulled back inside the apartment, and slid the door closed. Robertson relayed that information to Shiblom and the dispatcher by radio, confirming that Reed was in the apartment.

The man returned to the front door and Shiblom saw him sufficiently to recognize him as Reed. Reed came out of the apartment, turned around, and placed his hands behind his back. However, as Shiblom reached for her handcuffs to take Reed into custody, he started to move quickly past Shiblom toward the nearby stairs. As he passed her, Shiblom reached out and grabbed Reed's shirt. With Shiblom hanging on to his shirt, Reed started running down the stairs. When they reached a landing where the stairs turned, Shiblom adjusted her grasp and got a better hold on the shirt, and told Reed he was under arrest, but Reed continued down the steps, pulling Shiblom along as he did so. As they turned at the landing, Shiblom—significantly shorter and lighter than Reed—was pulled off balance, and both she and Reed fell.

As she landed on the concrete, Shiblom hit head first and she fell over onto her left arm; she did not see how Reed landed. Reed apparently lost his shoe in the fall, as it was later found at the bottom of the stairs. Shiblom was dizzy for a few seconds and when she looked up, Reed was running. The deputy got up and ran after him, then broke off her chase as she realized she had lost her radio in the fall and would be unable to report her status during a pursuit. Shiblom acknowledged Reed did not strike her or initiate any physical contact with her as he ran down the stairs.

As those events were developing, Robertson heard screaming from the front of the building and ran that way. He did not see Reed or Shiblom, but neighbors yelled to him that "they ran northbound." Robertson started in that direction, but stopped when he saw Shiblom's radio at the bottom of the steps where it had dislodged in her fall. He called the dispatcher to report Reed had fled and Shiblom was following him without her radio. When Shiblom returned to the steps a few moments later to retrieve her radio, Robertson left in his vehicle to try to track down Reed. Robertson was checking the large trash bins in another nearby apartment complex when he saw Reed climb out of a bin and run off. As Robertson drove after Reed yelling for him to stop, an officer from the Wichita Police Department appeared ahead and started chasing Reed on foot. By the time Robertson drove around some buildings where Reed and the other officer had gone, Reed was in custody.

From her fall on the stairs, Shiblom sustained a head injury—a "pretty good sized bump"—as well as scrapes and bruises on her left arm. Pictures of Shiblom's injuries were admitted at trial.

The district attorney charged Reed with battery against a law enforcement officer and interference with law enforcement. At trial, the State only presented the testimony of the two deputies, along with photographs admitted as exhibits and a stipulation that on March 13, 2015, there was a valid warrant for Reed's arrest. Reed moved for a judgment

of acquittal on the battery charge, claiming the State had failed to prove any intentional touching or application of force by Reed against Shiblom. Defense counsel also argued the charges of battery and interference were multiplicitous. The State responded that the battery was based on reckless conduct, rather than intentional, and, while the two charges arose from one series of events—the attempt to avoid being arrested on the warrant—two separate crimes were committed. The court denied the motions. Reed then elected not to testify, and no other evidence was presented on his behalf.

During the instruction conference, neither counsel objected to the wording of the elements instructions for the two charged crimes. Defense counsel also confirmed that the court had not omitted any additional instructions that he had requested. After instruction, argument, and deliberation, the jury returned guilty verdicts on both charges.

At the sentencing hearing, the district judge denied Reed's motions for new trial and judgment of acquittal. The State asked the court to impose consecutive sentences based on the aggravated numbers in the applicable grid boxes. Reed's primary offense was the severity level 7 person felony of battery against a law enforcement officer, to which his category "A" criminal history applied, placing him in a presumptive prison status. Reed's attorney filed and argued a motion for a dispositional or durational departure, which the court denied. Instead, based upon Reed's lengthy criminal history and prior failures while on probation, the court imposed an aggravated presumed sentence of 34 months in prison for battery against a law enforcement officer and 7 months for interference with law enforcement, with the two sentences to be served concurrently. Reed timely appealed his convictions.

ANALYSIS

On appeal, Reed presents three issues: (1) the district court erred in denying his pro se motion for new counsel, heard on the first day of his trial; (2) the district court

4

failed to instruct the jury that the State was required to prove Reed's acts were the proximate cause of Shiblom's injuries; and (3) the district court instructed the jury on the State's burden of proof in a way that affected the jury's understanding of its option for nullification.

*Motion for new counsel*

Reed filed a pro se motion for dismissal of his counsel and appointment of a successor. The court, counsel, and Reed took up the motion before voir dire began on August 3, 2015, although the motion was signed by Reed on July 29 and was not filed with the clerk until August 4. In his motion, Reed claimed his counsel, James Mamalis, along with others working in the public defender's office, should be removed from his representation "on the grounds of a conflict of interest due to ineffective assistance of counsel" by Mamalis. Reed asserted that Mamalis: "[took] advantage of his naïve client" and had not prepared for jury trial; had not provided Reed with "the full discovery of evidence as requested;" had not kept him informed of continuances and "actions filed by himself without the Defendant's consent;" and failed "to inform the Defendant" and to move to withdraw "due to such lack of defense," which denied Reed of his right to a fair trial.

While the right to effective counsel is constitutionally guaranteed, an indigent defendant does not have the right to require the court to appoint counsel of his or her choice. *State v. Burnett*, 300 Kan. 419, 449, 329 P.3d 1169 (2014). The Sixth Amendment of the United States Constitution only requires replacement of appointed counsel if the defendant establishes "justifiable dissatisfaction" with his current counsel. *State v. Brown*, 305 Kan. 413, 424, 382 P.3d 852 (2016). This standard can be met if a conflict of interest is established, if the defendant and counsel have reached an irreconcilable disagreement, or there has been a complete breakdown of communication between counsel and the defendant. 305 Kan. at 424.

5

If the district court makes an appropriate inquiry when a motion to appoint new counsel is filed, we review for an abuse of discretion. The burden of proof rests on the party challenging the court's ruling to show that an abuse of discretion has occurred. 305 Kan. at 423. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

During the hearing on his motion, Reed complained that his preliminary hearing was continued three times, but his counsel only consulted with him about the second one. Reed also said he and Mamalis did not talk prior to the preliminary hearing to discuss how Reed wanted to approach it. He told the court that he had told Mamalis he would like to resolve the case before trial.

Reed said Mamalis did come to see him before trial and asked about Reed's clothing sizes. Reed then asked whether Mamalis had spoken with the prosecutor about a further plea offer, and the answer was no because Mamalis understood Reed wanted to go to trial. While Reed acknowledged he had "disregarded" an earlier plea offer from the district attorney, he told the court he wanted to get some information together to try to get a better deal.

Reed stated he had walked out of one meeting when he felt he was too limited in the time to discuss the case with his attorney and because at that point he felt Mamalis was not going to represent his interests. He admitted Mamalis contacted him a couple of days later, but Reed refused to meet with him because he felt like "he [was] not my lawyer." Reed also mentioned an argument with counsel about the severity level of the charges he was facing and contended that his attorney was aggressive and that he did not feel safe going forward with Mamalis "as far as . . . me getting the right counsel."

6

In response, the State contended Reed was not a novice concerning court procedures as evidenced by his category "A" criminal history. The prosecutor told the court that defense counsel had approached him the previous week with suggestions for a better plea agreement in lieu of trial, but the State declined because, before the preliminary hearing, Reed had rejected the only offer the State was willing to make. The prosecutor also expressed skepticism about Reed's motives in coming before the court on the day of trial, while also on probation in two other cases, wanting a new attorney.

Defense counsel told the court that he had relayed the State's only plea offer to Reed before the preliminary hearing and Reed rejected it. Counsel said he tried to make things clear to his client but understood "steadily" that Reed wanted to go to trial. Counsel told the court he met with Reed "quite a bit" and had represented Reed in a number of other cases. Counsel also represented that he was prepared for trial but during the prior week, after he and Reed had a disagreement, Reed refused to speak to him twice thereafter. Mamalis said his remaining uncertainty was whether Reed wanted to testify at trial. If so, he would need some time to prepare him for that testimony.

After hearing these statements, the court denied Reed's motion for new counsel. The court commented on the lateness of the motion, the visits Mamalis had with Reed, and the fact that Mamalis had conveyed the only offer made by the State, which Reed rejected. The court found everyone was ready to go to trial and there were no grounds to terminate counsel's representation.

Reed bears the burden to show that the district court abused its discretion when it denied his motion. Although, in his written motion, Reed claimed his counsel had not prepared for trial, Mamalis declared his readiness but for the possibility that Reed might choose to testify, and Reed did not pursue that part of his motion before the court. We note that, although all trials are important, not all are complex. Here, the total evidence was two witnesses from the State and a number of exhibits. Reed and his counsel also

had a further opportunity to discuss the issue of his testimony, since the district court recessed overnight after voir dire and opening statements and began evidence the next morning.

In his statements to the district judge, Reed focused on his perception that his counsel had not followed up on Reed's desire to get a different, better plea deal before trial. According to the prosecutor, however, Mamalis had approached the prosecutor not long before trial to try to secure a better offer for Reed. The State was unwilling to consider any further proposals and the earlier offer had been withdrawn. Importantly, Reed provided no basis to conclude that a legal conflict of interest existed, or an irreconcilable disagreement, or a complete breakdown in communication—other than that initiated by Reed himself.

Reed tries to distinguish the facts in this case from *State v. Ferguson*, 254 Kan. 62, 864 P.2d 693 (1993), where our Supreme Court addressed a lack of communication due to the defendant's refusal to communicate with counsel. 254 Kan. at 74-76. Reed argues that Ferguson was suspicious of any attorney paid by the government, while he simply wanted a different government-paid counsel. The underlying *Ferguson* principle, however, applies to this case. Counsel was working with Reed until Reed refused communication just days before trial. Reed's primary complaint, other than the absence of a more advantageous plea offer, seems to be that Mamalis did not consult with him often enough. After hearing from all the interested parties, the district court was satisfied that was not the case. If the district court reasonably believed that the attorney-client relationship has not deteriorated to the point where counsel could no longer fairly and effectively present a defense, the court was justified in refusing to appoint new counsel. *Brown*, 305 Kan. at 425.

Based upon the record before us, we cannot say the trial court's decision to deny Reed's motion was one no reasonable person would make, or that it was based on any error of law or fact. We find no basis for Reed's claim of error.

*Instruction on proximate cause*

Reed next argues that the district court committed error when it failed to instruct the jury that the State must prove Reed's actions were the proximate cause of Shiblom's injuries. Reed admits his trial counsel did not request the instruction.

When a jury instruction issue is raised for the first time on appeal, it is not preserved for appellate review unless the giving, or failure to give, the instruction was clearly erroneous. K.S.A. 2016 Supp. 22-3414(3); *State v. Herbel*, 296 Kan. 1101, Syl. ¶ 7, 299 P.3d 292 (2013). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

Review for clear error, however, is not our first step in the process:

> "To determine whether an instruction or a failure to give an instruction was clearly erroneous, the reviewing court must first determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record." *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012).

Reed was charged with battery against a law enforcement officer, as defined in K.S.A. 2016 Supp. 21-5413(c)(2)(B), based on the allegation that Reed recklessly caused bodily harm to Shiblom. The district court instructed the jury on the meaning of reckless conduct, consistent with PIK Crim. 4th 52.010 and the statutory definition:

9

"A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2016 Supp. 21-5202(j).

Reed invites comparison with *State v. Collins*, 36 Kan. App. 2d 367, 138 P.3d 793 (2006). In *Collins*, the defendant was charged with involuntary manslaughter while driving under the influence of alcohol. Collins, driving a pickup truck, hit a motorcycle parked in the roadway. The motorcycle rider had stopped there, leaving the motorcycle with his passenger aboard as he went to the roadside to urinate. The passenger was killed when Collins hit the motorcycle. 36 Kan. App. 2d at 367-68. After reviewing prior cases involving involuntary killings, the court concluded that, under the facts of that case, the district court did not commit error in giving an instruction on proximate cause. 36 Kan. App. 2d at 372.

Reed argues that the jury should have been asked to decide whether his actions caused Shiblom's injuries or they were caused by her decision to grab and hold his shirt as he ran from her. Reed's reliance on *Collins* and the tort concept of proximate cause is misplaced. In *Collins*, the question was whether, within that set of facts, Collins' driving under the influence, or the motorcycle rider's decision to leave his motorcycle and passenger in the roadway in the middle of the night, caused the motorcycle passenger's death. We have a very different set of facts here. Shiblom not only had a legal right, but a duty, to apprehend Reed. Reed had no right whatsoever to run to keep her from taking him into custody. The jury was properly instructed to decide whether Reed's actions were reckless and caused injury to Shiblom.

There was no error in failing to give a proximate cause instruction, since it clearly was not legally appropriate. Reed's second issue fails before reaching analysis for clear error and is without merit.

10

*Burden of proof instruction—nullification*

Finally, Reed challenges the burden of proof instruction advising the jury that if it found the State had proven each of its claims beyond a reasonable doubt, it "should" find the defendant guilty. Reed argues that the word "should" in that sentence needed to be replaced with "may" to make it clear to the jury that it did not have to convict Reed. Not only did defense counsel not object to this instruction at trial, but the exact instruction given was specifically requested by Reed.

Even if we were to assume Reed clears the invited error obstacles raised by his request for the instruction he now contends was erroneous, his issue still fails. Our analysis for this claim of instruction error follows the structure and standard discussed above. There was no error in failing to give the instruction Reed now advocates.

Another panel of this court has addressed the appropriateness of the identical instruction advocated by Reed. That panel noted:

> "The Kansas Supreme Court has consistently decided that jury instructions informing juries of the power of nullification are not appropriate. See *State v. SmithParker,* 301 Kan. 132, 164, 340 P.3d 485 (2014); [*State v.*] *Naputi,* 293 Kan. 55, Syl. ¶ 4[, 260 P.3d 86 (2011)]; [*State v.*] *McClanahan,* 212 Kan. [208,] 210-17[, 510 P.2d 153 (1973)]. Because there is no indication the court is departing from its previous decisions, we are bound to follow the established precedent. *State v. Ottinger,* 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012)." *State v. Jones*, No. 111,386, 2015 WL 4716235, at *6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (2016).

The panel in *Jones* found the instruction now sought by Reed was legally inappropriate. We agree. There was no error by the district court and Reed's argument is without merit.

As we find no error by the district court on any of Reed's issues, we affirm.