NOT DESIGNATED FOR PUBLICATION

No. 120,902

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GARON B. SPENCER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed May 8, 2020. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., POWELL and SCHROEDER, JJ.

PER CURIAM: Garon Spencer appeals his convictions and sentences for rape, aggravated criminal sodomy, and aggravated sexual battery. Spencer waived his right to a jury trial and went on to have a bench trial. The district court found Spencer guilty of all three charges and sentenced him to 852 months in prison. On direct appeal, Spencer argues that the evidence was insufficient to support his convictions and that the Kansas Sentencing Guidelines Act (KSGA) violates § 5 of the Kansas Constitution Bill of Rights. Because the evidence was sufficient beyond a reasonable doubt and the KSGA is constitutional, we affirm.

1

In November 2017, 68-year-old L.A. lived with her daughter Danielle, Danielle's fiancé Wesley Young, and three grandchildren. Spencer was friends with Danielle and was also staying in the home. On November 9, 2017, L.A. stayed home while Young took Spencer out to a bar. After returning from the bar, Spencer continued drinking alcohol at a bonfire on L.A.'s property.

Meanwhile, L.A. had gone to bed about 10:30 p.m. on November 9. Hours later, approximately 4 a.m. on November 10, L.A. awoke when she felt a hand touching her body. L.A. initially thought one of her young grandchildren was in her bed. But as the hand started touching her breast, L.A. turned over to see that it was Spencer touching her.

Upon realizing that Spencer was in her room, L.A. told him to go back to bed. Instead, Spencer forcefully removed L.A.'s pajamas, despite her fighting against him. Spencer then penetrated L.A.'s rectum with his penis. L.A. screamed at Spencer to stop. Spencer then made comments about L.A.'s deceased husband.

L.A.'s husband had died the previous year. Spencer told L.A. that her husband spoke to him, and "told him to come in and that we would enjoy it and it would make [L.A.] fun and happy and young again." The comment enraged L.A. and she slapped him. Spencer then changed to saying it was God telling him that if they had sex, then L.A. would be fun and happy and young.

Sexual acts continued from 4 a.m. until approximately 7 a.m. The nonconsensual acts included vaginal and anal penetration. L.A. told Spencer to stop but "didn't want to scream too loud" because she did not want her grandsons to wake up and "walk in on this situation."

2

At around 7 a.m., Danielle walked into L.A.'s bedroom. On seeing Spencer lying on top of her mother, Danielle began screaming and ran to get help from Young. Spencer ran into the bathroom and tried to put on his underwear and pants. By the time Danielle returned with Young, Spencer was standing with both of his legs pulled through one pant leg of his underwear. Spencer attempted to explain the incident.

First, Spencer asserted that he and L.A. had only been talking. He also told Danielle and Young that he was romantically involved with L.A. and that she had asked for it. Also, Spencer asserted that he had been drugged. Spencer offered to prove that he had been drugged by vomiting. Danielle provided him with castor oil to induce vomiting. To Danielle, the resulting vomit seemed to contain only alcohol.

Young decided he needed to get Spencer away from the house because he felt he might become violent with Spencer. Young took Spencer to the home of one of Spencer's friends. Young then returned home and called the police.

A physical examination of L.A. showed vaginal and anal injuries consistent with blunt force penetrating trauma. Investigators also questioned Spencer. Spencer said, "I am here because I was messed up on something. I don't know what happened. I guess I tried jumping in bed with my friend's mom. I don't remember that really."

The State charged Spencer with rape, in violation of K.S.A. 2017 Supp. 21-5503(a)(1)(A), aggravated criminal sodomy, in violation of K.S.A 2017 Supp. 21-5504(b)(3)(A), and aggravated sexual battery in violation of K.S.A. 2017 Supp. 21-5505(b)(1). Spencer waived his right to a trial by jury and decided to have a bench trial. In closing argument, defense counsel argued that Spencer's mental culpability had not been proven beyond a reasonable doubt, emphasizing evidence of Spencer's intoxication. The trial judge found Spencer guilty on all three counts.

At sentencing, with no objection from Spencer, the district court determined that his criminal history score was A. In keeping with that score, the court sentenced Spencer to 653 months in prison on the count of rape. The court imposed a consecutive sentence of 165 months in prison on aggravated criminal sodomy followed by a consecutive 34 months in prison for aggravated sexual battery. This resulted in a total prison sentence of 852 months.

Spencer timely appeals the district court's conviction and sentencing.

*Was the Evidence Sufficient to Support the District Court's Guilty Verdict?*

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

K.S.A. 2017 Supp. 21-5205 states the following:

"(a) The fact that a person charged with a crime was in an intoxicated condition at the time the alleged crime was committed is a defense only if such condition was involuntarily produced and rendered such person substantially incapable of knowing or understanding the wrongfulness of such person's conduct and of conforming such person's conduct to the requirements of law.

"(b) An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Spencer argues that the State did not present sufficient evidence to overcome his assertions of involuntary intoxication. Spencer argues that there was no trial evidence which affirmatively disproved his claim that he was involuntarily drugged before committing rape, aggravated criminal sodomy, and aggravated sexual battery. Thus, Spencer asserts, the trial judge should have concluded that this drugging did, in fact, happen. See *Lorbeer v. Weatherby*, 190 Kan. 576, 580, 376 P.2d 926 (1962) (holding that a jury may not ignore uncontroverted evidence). Spencer argues that his statements about hearing from God and the spirit of L.A.'s dead husband seemed to be a byproduct of an involuntary drugging rather than ordinary alcohol intoxication.

Spencer also argues that his voluntary intoxication negated the specific intent element of aggravated sexual battery. Spencer argues that the evidence at trial showed that he had been drinking on the night of the encounter. Also, the evidence showed a level of impairment which could undermine criminal intent. In particular, Spencer made statements during his questioning by law enforcement that he could not remember what he had done.

First, the State responds to Spencer's involuntary intoxication argument by analogizing Spencer's involuntary intoxication argument to the involuntary intoxication argument made in *State v. Cooper*, 252 Kan. 340, 350, 845 P.2d 631 (1993). At Cooper's jury trial for rape, a police officer testified that Cooper maintained that he drank a six-pack of beer and felt like "someone had put something in his beer, perhaps a barbiturate or something, because he doesn't remember beer affecting him that way." 252 Kan. at 350. Our Supreme Court rejected Cooper's argument that an involuntary intoxication instruction was warranted by his "'morning after' surmise." 252 Kan. at 350. The State here argues that Spencer's statements to Danielle and Young about having been drugged were "conjecture," just like Cooper's statements. Spencer never identified a drug, or who would have drugged him. He merely asserted being drugged as one of several explanations to explain his behavior.

Also, the State points to L.A.'s testimony that Spencer "didn't appear to be drugged" and that he "appeared to be in his right mind and know exactly what he was doing." Thus, the State argues that Spencer's argument about involuntary intoxication should be rejected in the same way that our Supreme Court rejected Cooper's contentions.

Second, the State argues that Spencer's voluntary intoxication argument should also fail. The State argues that the evidence showed only that Spencer may have been intoxicated, but not so much that he could not form the requisite intent element. For this premise, the State points to our Supreme Court's holding in *State v. Hernandez*, 292 Kan. 598, 607, 257 P.3d 767 (2011). The evidence at Hernandez' murder trial showed that Hernandez had consumed alcohol, had used marijuana, and had possibly used cocaine on the day of the murder. Witnesses even described Hernandez as "high" or "intoxicated" before the crime. 292 Kan. at 607. Nevertheless, witnesses also indicated that Hernandez knew what was going on and what he was doing. Our Supreme Court declined to infer impairment based on evidence of consumption alone. Rather, a "defendant must present evidence that his or her consumption of alcohol or drugs impaired his or her mental faculties so as to render him or her unable to form the requisite intent." 292 Kan. at 607. The State asserts that Spencer, like Hernandez, failed to present evidence that his mental faculties were so impaired that this negated the requisite intent element.

In asserting his involuntary intoxication defense, Spencer mischaracterizes our Supreme Court's holding in *Cooper*. Spencer argues that there was no trial evidence which affirmatively disproved his claim that he was involuntarily drugged. Our Supreme Court, however, has placed the burden on defendants to make some showing of involuntary intoxication. *Cooper*, 252 Kan. at 350 (holding that "[b]efore intoxication may be said to be 'involuntary' a defendant must show an irresistible force, which is something much more than a strong urge or 'compulsion' to drink"). As we said in *State v. Shugart*, an involuntary intoxication defense would require more support than simple

conjecture and a defendant's self-serving statements. No. 109,795, 2014 WL 6909542, at *6 (Kan. App. 2014) (unpublished opinion) (citing *Cooper*, 252 Kan. at 350).

Additionally, there is no evidence in the record to show that either drugs or alcohol rendered Spencer "substantially incapable of knowing or understanding the wrongfulness" of his conduct. K.S.A. 2017 Supp. 21-5205(a). To the contrary, L.A. testified that he was "in his right mind and knew exactly what he was doing." As a result, the district court had substantial competent evidence to reject Spencer's involuntary intoxication argument as a defense under K.S.A. 2017 Supp. 21-5205(a). On that basis, the district court properly found Spencer guilty beyond a reasonable doubt of rape, aggravated criminal sodomy, and aggravated sexual battery.

As Spencer and the State both correctly maintain, voluntary intoxication could constitute a defense to only the charge of aggravated sexual battery. Of the three crimes which Spencer was convicted, only aggravated sexual battery has a specific intent requirement. K.S.A. 2017 Supp. 21-5505(b) ("Aggravated sexual battery is the touching of a victim who is 16 or more years of age and who does not consent thereto *with the intent to arouse or satisfy the sexual desires of the offender or another . . . .* [Emphasis added.]"). Evidence of consumption of an intoxicant near the time of the commission of the crime does not automatically render a jury instruction on voluntary intoxication mandatory. *State v. Reed*, 302 Kan. 390, 400, 352 P.3d 1043 (2015). At Spencer's bench trial, the district court was not required to "'infer impairment based on evidence of consumption alone.'" *State v. Hilt*, 299 Kan. 176, 193, 322 P.3d 367 (2014).

For a jury trial, "'[e]vidence that the defendant is so impaired that he or she has lost the ability to reason, to plan, to recall, or to exercise motor skills as a result of voluntary intoxication' can compel a jury instruction." *Reed*, 302 Kan. at 400. Similar evidence would be necessary for Spencer to present a defense of voluntary intoxication at his bench trial. In his brief, Spencer's only evidence for his intoxication that night is his

7

inability to recall his assault on L.A. when questioned during the investigation. But as stated earlier, L.A. also testified that Spencer seemed to have his mental faculties intact while he assaulted her. The district court, before pronouncing a verdict, read both K.S.A. 2017 Supp. 21-5205 and PIK Crim. 4th 52.060 before discussing the voluntary and involuntary intoxication defenses. The district court explicitly weighed the evidence on the record. Despite evidence that Spencer had consumed alcohol that night, the district court found that Spencer was "clearly in touch with his actions" and formed the requisite intent element.

We review the district court's decision for substantial competent evidence. See *Chandler*, 307 Kan. at 668. The district court considered whether Spencer had lost the abilities to reason, to plan, or to exercise motor skills because of his voluntary intoxication. The district court explained that the duration of the crime, approximately three hours, weighed against Spencer having lost motor skills, reasoning, or planning. Also, the district court found that there was little or no confusion on Spencer's part because he conversed with L.A. and he talked with her about her deceased husband while he assaulted her. Additionally, the district court credited testimony that Spencer was able to respond to L.A., to fight with L.A., and to forcibly remove the clothing of L.A. The district court found that such actions undermined a voluntary intoxication defense.

Finally, although the district court explained that Spencer's reactions after the incident showed some level of intoxication, it was not enough to negate his reasoning, planning, or motor skills. Namely, Spencer moved around, got dressed, attempted to explain his behavior, and later apologized for it. Thus, we conclude that the district court correctly pointed to substantial competent evidence in the record which, when viewed in the light most favorable to the prosecution, supports Spencer's conviction of aggravated sexual battery.

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Spencer argues that the KSGA is "facially unconstitutional" because it provides for judicial determination of a defendant's criminal history, violating § 5 of the Kansas Constitution Bill of Rights. Spencer concedes that this argument has been rejected with respect to the United States Constitution. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Similarly, Spencer admits our Supreme Court has repeatedly rejected the argument that the KSGA violates the Sixth and Fourteenth Amendments to the United States Constitution. See *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002). Spencer concedes that he did not raise this issue before the district court. But Spencer argues that the issue can be raised for the first time on appeal under the first two exceptions: The question is solely a question of law and is finally determinative of the case, and consideration of the issue is necessary to prevent denial of fundamental rights.

The sum of Spencer's argument is the following assertion: "prior to Kansas' statehood, American common law required any fact which increased the permissive penalty for a crime—inclusive of an offender's prior criminal convictions—to be proven to a jury beyond a reasonable doubt." We note Spencer conveniently skips from discussion of *Kansas* to *American* common law. That is, Spencer supports the proposition by citing to an 1854 case from Massachusetts and an 1859 case from Georgia. Spencer provides no Kansas authority showing that, as a territory or as a new state, Kansas required a previous conviction to be proved to a jury.

Nevertheless, Spencer goes on to assert the following contingent conclusion: "If this assertion is correct . . . , then it necessarily follows that the sentencing scheme set out by the KSGA—in which judicial findings of criminal history elevate a defendant's presumptive prison sentence—is unconstitutional." Spencer's quoted argument is, verbatim, the precise argument considered and rejected by this court in *State v. Valentine*, No. 119,164, 2019 WL 2306626, at *6 (Kan. App. 2019) (unpublished opinion), *rev. denied* December 17, 2019. Spencer argues that *Valentine* was wrongly decided.

In *Valentine*, this court noted that our Supreme Court has consistently rejected § 5 of the Kansas Constitution Bill of Rights' version of Valentine's argument, which Spencer has adopted and now makes. Then the *Valentine* court stated that "it is incumbent on Valentine to provide authority showing our Supreme Court interprets—or would interpret—§ 5 of the Kansas Constitution Bill of Rights to require jury findings that the Sixth Amendment does not. He fails to do so." 2019 WL 2306626, at *6.

Spencer here asks us to explicitly consider the precise question of if § 5 of the Kansas Constitution Bill of Rights guarantees criminal defendants the right to a jury trial on prior conviction findings. Spencer asserts that this case demands us to decide the issue because our Supreme Court has not considered it. On the other hand, the State points out that our Supreme Court has considered and rejected the idea that § 5 of the Kansas

10

Constitution jury trial right is broader than the Sixth Amendment jury trial right in *State v. Conley*, 270 Kan. 18, 35-36, 11 P.3d 1147 (2000). The State further argues that our Supreme Court has treated the jury trial right the same under the Kansas and United States Constitutions on this point and that we are bound to follow that precedent. *Conley*, 270 Kan. at 35-36; *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011) (holding that this court is bound by our Supreme Court's precedent).

In any event, Spencer's argument ignores that he is not similarly situated to Valentine. Valentine was convicted at the close of a jury trial, and then a district judge made a criminal history finding at a separate sentencing hearing. 2019 WL 2306626, at *1, 6. But Spencer here waived his right to a jury trial and went on to have a bench trial. The State presented Spencer's criminal history to the judge, and Spencer did not object or present counter evidence. Spencer now argues that the judicial prior conviction findings are unconstitutional. Nevertheless, when Spencer waived his right to a jury trial, he obviously allowed the district court judge to make the judicial prior conviction findings that he now says are unconstitutional. See K.S.A. 60-401(k) (The "'[t]rier of fact' includes a jury, or a judge when he or she is trying an issue of fact other than one relating to the admissibility of evidence.").

Spencer here is trying to have one's cake and eat it too. In other words, he is trying to have two incompatible things. On one hand, he argues that he has the right to have a jury determine any penalty-enhancement findings for his current crime of conviction. On the other hand, the record clearly shows that Spencer waived his right to a jury trial. On that basis, the district court judge had the authority to determine any penalty-enhancement findings for his current crime of conviction. Based on these two propositions, something cannot both *be* and *not be*.

For example, if Spencer eats his cake, keeping possession of the cake is no longer possible. Spencer's jury trial argument proceeds similarly:  Spencer cannot both have a

11

right to a jury trial and not have a right to a jury trial. Like the example of the cake, once someone eats the cake, the cake is no longer a cake. And once Spencer waived his right to a jury trial, he no longer had a right to a jury trial.

For all of the previously discussed reasons, Spencer's arguments fail.

Affirmed.